1999 ME 144

**BRYAN R.**

v.

**WATCHTOWER BIBLE AND TRACT SOCIETY OF NEW YORK, INC.,** et al.

Supreme Judicial Court of Maine.

Argued May 4, 1999.

Decided Oct. 18, 1999.

**842**

Michael J. Waxman (orally), Portland, for plaintiff.

Bruce C. Mallonee (orally), Rudman & Winchell, LLC, Bangor, and Paul D. Polidoro, Patterson, NY, for Watchtower and others, defendants.

Frederick C. Moore (orally), Robert C. Robinson, Daniel Nuzzi, Robinson Kriger & McCallum, Portland, for the Roman Catholic Bishop of Portland, amicus curiae.

Paul C. Catsos, Thompson & Bowie, Portland, did not file briefs for additional church defendants.

M. Michaela Murphy, Daviau Jabar & Batten, Waterville, did not file briefs for Baker.

Before WATHEN, C.J., and CLIFFORD, DANA, SAUFLEY, and ALEXANDER, JJ.

SAUFLEY, J.

[¶ 1] Bryan R. alleges that he was sexually abused during several of his adolescent years by Larry Baker, an adult member of his church. He has obtained a judgment against Baker, but his complaint against the church and its elders was dismissed by the Superior Court (Cumberland County, *Calkins, J.*) for failure to state a claim. He appeals from the judgment dismissing the claims against the church defendants. We affirm the judgment.

## I. BACKGROUND

[¶ 2] Because this matter was presented to the Superior Court on the church's motion to dismiss, we take the material allegations of the complaint as admitted. *See McAfee v. Cole,* 637 A.2d 463, 465 (Me.1994). The following facts were alleged in Bryan's complaint:

[¶ 3] The Watchtower Bible and Tract Society is a New York-based nonprofit corporation, better known as the Jehovah's Witnesses. It is a religious organization. When the events at issue occurred, Robert Wells, Pat LaBreck, and Bryan's stepfather were "elders" and members of the "judicial body" of the Augusta congregation of the church, Larry Baker was an adult member of the church, and Bryan R. and his family were members of the congregation.

[¶ 4] At some time in the past, also while Larry Baker was an adult member of the church, he molested a minor member of the congregation identified as "John Doe." The elders of the Augusta congregation knew that Baker had molested John Doe. Wells, LaBreck, and Bryan's stepfather, in their roles as the judicial body of the Augusta congregation, decided on the following response to Baker's actions: (1) they demoted Baker from "ministerial servant" to "baptized entry level member"; (2) they "privately rebuked" Baker; and (3) and they temporarily "forbade Baker from having any contact with minor members" of the church. The defendants did not alert the members of the church to Baker's misdeeds.[1]

[¶ 5] Eventually, Baker was allowed by the defendants to resume activities as an ordinary member of the church. Bryan alleges that Baker was able to earn his trust and confidence because the church placed Baker in a position of leadership and respect. Bryan was molested by Baker from 1989 through 1992 while Bryan was a teenager and lived next door to Baker. He alleges that his stepfather, who was aware of Baker's history, nonetheless allowed Baker to spend time alone with Bryan at his home. As a result of Baker's repeated sexual abuse, Bryan suffered significant emotional harm necessitating psychiatric hospitalization.

---

1. Bryan alleges that among the options available to the defendants upon discovering Baker's misdeeds were: (1) "kick[ing] him out" of the Watchtower Society; (2) publicly rebuking him for his actions; (3) requiring him to undergo "professional evaluation for sexual impulse control"; (4) and requiring him to undergo "professional treatment for sexual impulse control." Bryan alleges that the defendants took none of these steps.

[¶ 6] Bryan filed this action against Baker, the church, and its elders to recover damages for the injuries he suffered as a result of Baker's assaults on him. In count I of his complaint, he alleged that each of the defendants breached a fiduciary duty owed to him as a member of the congregation; in counts II and III, he alleged that the defendants were liable to him for negligent infliction of emotional distress and intentional infliction of emotional distress. Count IV contained Bryan's claim against Baker for battery, and in count V. Bryan alleged that his stepfather was individually liable for negligence. The stepfather was later dismissed from the action pursuant to a joint motion filed by the parties, thereby resolving count V.

[¶ 7] The Watchtower Society, Robert Wells, and Pat LaBreck filed a motion to dismiss each of the claims against them. After a hearing, the Superior Court granted the motion, concluding that Bryan had failed to state a claim, relying on *Swanson v. Roman Catholic Bishop of Portland*, 1997 ME 63, 692 A.2d 441. Bryan's appeal from that judgment was remanded for lack of finality because the claims against Larry Baker had not yet been adjudicated. The Superior Court, based on a stipulation of the parties, entered judgment against Baker. After the entry of judgment against Baker, Bryan appealed from the court's judgment dismissing the claims against the church defendants. Baker did not appeal the judgment against him.

## II. DISCUSSION

A. Standard of Review and Claims Asserted

[¶ 8] In reviewing the trial court's dismissal of a complaint, we "exam-ine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief" pursuant to a valid cause of action. *McAfee*, 637 A.2d at 465, *quoted in Hamilton v. Greenleaf*, 677 A.2d 525, 527 (Me.1996). "The legal sufficiency of a complaint challenged pursuant to M.R. Civ. P. 12(b)(6) is a question of law." *Hamilton*, 677 A.2d at 527.

[¶ 9] Before examining the claims asserted by Bryan, it is instructive to address those claims that he does not assert. He does not allege that Baker was an agent or employee of the church. Nor does he claim that Baker occupied any clerical position such as priest, minister, or pastor. *Cf. Swanson*, 1997 ME 63, ¶ 13, 692 A.2d at 445.[2] Moreover, the complaint does not allege that the church affirmatively placed Baker in a position of control and supervision of children, such as a Sunday school teacher or youth coordinator, or that the church knowingly placed Baker in a position where he could sexually abuse children within a church setting. Rather, Bryan alleges that Baker was "able to *earn* [Bryan's] trust and confidence" because of his position of power and authority in the church.[3] These allegations place Baker in a relationship to Bryan that was not different in quality from any other member in good standing of the church.

[¶ 10] The crux of Bryan's claim is that the church, because of an alleged special relationship with its members, has a duty to protect its members from each other, at least when the church and its agents are aware of a potential danger posed by a member. Because the church elders knew of Baker's propensity to abuse children,

2. Because Baker is not alleged to have been an employee or agent of the church, we are not called upon to determine whether the "balancing of interests" we referenced in *Swanson* may require a different result when a child, rather than an adult, is injured by an agent of the church. *Swanson*, 1997 ME 63, ¶ 13, 692 A.2d at 445.

3. He also argues that the church allowed Baker to lead "Field Ministry Excursions" which included Bryan, thereby implying that by cloaking Baker with power and respect, the church negligently allowed Baker to gain Bryan's trust.

Bryan argues that they had an independent duty to protect him from Baker.[4] He addresses that duty through three separate counts. We address each count in turn.

## B. Breach of Fiduciary Duty

■ [¶ 11] Bryan bases his first theory of liability on an alleged duty on the part of the church to protect him from the actions of dangerous third parties. Whether a defendant owes a duty of care to a plaintiff is a matter of law for the court. *See McPherson v. McPherson,* 1998 ME 141, ¶ 8, 712 A.2d 1043, 1045; *Fish v. Paul,* 574 A.2d 1365, 1366 (Me. 1990). In determining whether a duty exists, we must ascertain whether the alleged wrongdoer is " 'under any obligation for the benefit of the particular plaintiff.' " *Trusiani v. Cumberland & York Distribs., Inc.,* 538 A.2d 258, 261 (Me.1988) (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 53, at 356 (5th ed.1984)).

■ [¶ 12] There does not exist a general obligation to protect others from harm not created by the actor. "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." RESTATEMENT (SECOND) OF TORTS § 314 (1965). In other words, the mere fact that one individual knows that a third party is or could be dangerous to others does not make that individual responsible for controlling the third party or protecting others from the danger.[5]

■ [¶ 13] Indeed, at early common law, inaction or nonfeasance was seldom actionable. As commentators have noted, "[l]iability for nonfeasance was ... slow to receive recognition in the law." KEETON, *supra,* § 56, at 373. Over decades, however, courts have come to recognize a duty on the part of certain groups to protect others from harm caused by third parties. "Certain relationships are protective by nature, requiring the defendant to guard his charge against harm from others." *Id.* § 56, at 383.[6] Nonetheless, "in the ab-

4. Had the clergy members of the church learned of Baker's assault on Joe Doe more recently, they would have had a statutory duty to report that information to the Department of Human Services and to the appropriate district attorney's office, unless the information was obtained during confidential communications. *See* 22 M.R.S.A. § 4011(1)(D) (Supp.1998). Bryan did not raise this issue before the Superior Court, and the amendment adding clergy to the list of mandated reporters was not enacted until long after the facts alleged in the complaint took place. *See* P.L.1997, ch. 251, § 1 (effective Sept. 19, 1997) (adding "clergy members" to the list of those responsible for reporting child abuse).

5. In limited circumstances, courts have recognized that an actor may have a duty to warn third parties of the dangerous propensities of another when the actor has a special relationship with the dangerous person and the person threatened is a specific, foreseeable, and identifiable victim of the dangerous person's threats. *See, e.g., Tarasoff v. Regents of Univ. of Cal.,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 345 (1976); *Thompson v. County of Alameda,* 27 Cal.3d 741, 167 Cal. Rptr. 70, 614 P.2d 728, 734–35 (1980) (declining to extend holding in *Tarasoff* when nei-

ther a special relationship existed nor had a specific individual been threatened); *Brenneman v. State,* 208 Cal.App.3d 812, 256 Cal. Rptr. 363, 367 (following *Thompson* in holding that "public entities and employees have no affirmative duty to warn of the release of an inmate with a violent history who has made nonspecific threats of harm directed at nonspecific victims"); *Leonard v. Latrobe Area Hospital,* 425 Pa.Super. 540, 625 A.2d 1228, 1232 (1993) (following *Thompson,* finding "no common law rule that imposes a duty on a psychologist or psychiatrist to warn a nonpatient of a patient's dangerous propensities"). *But see, e.g., Perreira v. State,* 768 P.2d 1198, 1201 (Co.1989) (holding that psychiatrist has duty to third parties to exercise due care in treatment and release of committed patients).

6. Among those who have been held in certain circumstances to have a duty of care to protect others from harm by third parties are: innkeepers and proprietors of similar establishments, *see Brewer v. Roosevelt,* 295 A.2d 647, 651 (Me.1972); *Schultz v. Gould Academy,* 332 A.2d 368, 371 (Me.1975); *Tenney v. Atlantic Assocs.,* 594 N.W.2d 11, 17 (Iowa 1999); jailers, *see Harrison v. Ohio Dep't of*

sence of the requisite relationship, there generally is no duty to protect others against harm from third persons." *Id.* § 56, at 385.

[¶ 14] Even with the emergence of expanded liability for nonfeasance, that principle has remained clear—in instances of "nonfeasance rather than misfeasance, and absent a special relationship, the law imposes no duty to act affirmatively to protect someone from danger unless the dangerous situation was created by the defendant." *Jackson v. Tedd–Lait Post No. 75*, 1999 ME 26, ¶ 8, 723 A.2d 1220, 1221. Only when there is a "special relationship," may the actor be found to have a common law duty to prevent harm to another caused by a third party.[7] There is simply "no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless ... a special relation exists between the actor and the other which gives to the other a right to protection." RESTATEMENT (SECOND) OF TORTS § 315(b) (1965).[8]

[¶ 15] Therefore, in order to determine whether the church owed Bryan a duty of care to protect him from other members of the church, we must determine whether a special relationship, reviewable by the secular courts, exists between a church and its members in this context. Bryan asserts that such a relationship does exist, and he refers to it as a "fiduciary" relationship. "One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation." *Id.* § 874. He bases the alleged fiduciary relationship on the "substantial trust and confidence" he placed in the church, and alleges that the church breached its fiduciary duty to him when it failed to warn him about Baker and failed to exert some type of control over Baker's actions.

[¶ 16] Thus, we are presented with two questions: first, whether we would recognize a cause of action against a voluntary social or religious organization for breach of a fiduciary duty to protect the organization's members from each other. Put another way, we must determine whether a voluntary organization such as a church has a special relationship with its members that gives rise to a duty to protect those members from a class of third parties— other members of the organization. Second, we are asked to determine whether such a cause of action could be maintained against a church in light of the free exercise protections contained in the First Amendment.

[¶ 17] On the facts alleged in the complaint, we conclude that Bryan has failed to plead a fiduciary relationship with sufficient particularity, and we decline to recognize a general common law duty on the part of an organization such as a church to protect its members from each other. Accordingly, we do not reach the constitutional issue.

[¶ 18] We begin by addressing the identification of a fiduciary relationship.

*Rehabilitation & Correction,* 90 Ohio Misc.2d 32, 695 N.E.2d 1248, 1253 (1997); and schools, *see Hill v. Safford Unified Sch. Dist.,* 191 Ariz. 110, 952 P.2d 754, 756 (1997).

7. We do not address herein duties created by statute. *See, e.g., Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 119 S.Ct. 1661, 1666, 143 L.Ed.2d 839 (1999) (recognizing a statutorily imposed duty on the part of schools to protect children from abuse by other children or adults).

8. *Accord Gragg v. Wichita State Univ.,* 261 Kan. 1037, 934 P.2d 121, 128 (1997) (holding that corporate sponsors of fireworks on a university campus had no duty to control conduct of third party); *Hoff v. Vacaville Unified Sch. Dist.,* 19 Cal.4th 925, 80 Cal.Rptr.2d 811, 968 P.2d 522, 527–29 (1998) (holding that a school had no duty to protect pedestrian from student); *cf. J.E.J. v. Tri–County Big Brothers/Big Sisters, Inc.,* 692 A.2d 582, 584–85 (Pa.Super.Ct.1997) (holding that an organization had no duty to warn of potential danger from sexual abuse of one of its volunteers where injured child was not associated with organization's programs).

Bryan has not provided any support for his assertion that a religious organization has a fiduciary relationship with its members that requires it generally to protect those members from other members of the church who may present a danger. Nor have we ever found a fiduciary relationship to exist in the circumstances presented here. We recognize, as have many courts, that it is often difficult to articulate exactly what proof is required to establish the existence of a fiduciary relationship in particular circumstances.[9] A fiduciary relationship has been described as "something approximating business agency, professional relationship, or family tie impelling or inducing the trusting party to relax the care and vigilance ordinarily exercised." *L.C. v. R.P.*, 563 N.W.2d 799, 801–02 (N.D. 1997) (internal quotation and alterations omitted).

[¶ 19] We have described the salient elements of a fiduciary relationship as: (1) "the actual placing of trust and confidence in fact by one party in another," and (2) "a great disparity of position and influence between the parties" at issue. *Morris v. Resolution Trust Corp.*, 622 A.2d 708, 712 (Me.1993). A fiduciary relationship has been found to exist in several categories of relationship, including business partners, *see Rosenthal v. Rosenthal*, 543 A.2d 348, 352 (Me.1988), families engaged in financial transactions, *see Estate of Campbell*, 1997 ME 212, ¶ 9, 704 A.2d 329, 331–32, and corporate relationships, *see Moore v. Maine Indus. Servs., Inc.*, 645 A.2d 626, 628 (Me.1994); *Webber v. Webber Oil Co.*, 495 A.2d 1215, 1224–25 (Me.1985).

[¶ 20] We have noted, however, that a "general allegation of a confidential relationship is not a sufficient basis for establishing the existence of one." *Ruebsamen v. Maddocks*, 340 A.2d 31, 35 (Me. 1975). As with any duty, its existence must be informed by "the hand of history, our ideals of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall." *Trusiani*, 538 A.2d at 261. Although a fiduciary duty may be based on "moral, social, domestic, or[ ] merely personal [duties]," *Ruebsamen*, 340 A.2d at 34, it does not arise merely because of the existence of. kinship, friendship, business relationships, or organizational relationships. A fiduciary duty will be found to exist, as a matter of law, only in circumstances where the law will recognize both the disparate positions of the parties and a reasonable basis for the placement of trust and confidence in the superior party in the context of specific events at issue.[10] A court, therefore, must have before it specific facts regarding the nature of the relationship that is alleged to have given rise to a fiduciary duty in order to determine whether a duty may exist at law.

[¶ 21] Thus, because the law does not generally require individuals to act for the benefit of others, the factual foundations of an alleged fiduciary relationship must be pled with specificity. Simple recitations of a trusting relationship will not suffice for identifying a fiduciary duty. In order to survive a motion to dismiss a claim for breach of fiduciary

9. The term "fiduciary" is "one of the most ill-defined, if not altogether misleading terms in our law." *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 10 F.Supp.2d 138, 149 (D.Conn.1998) (internal quotation omitted). One court offered the following explanation:

Some of the indicia of a fiduciary relationship include the acting of one person for another; the having and exercising of influence over one person by another; the inequality of the parties; and the dependence of one person on another. Fiduciary duty

arises, for example, between attorneys and clients, guardians and wards, and principals and agents.

*Doe v. Hartz*, 52 F.Supp.2d 1027, 1059 (N.D.Iowa 1999) (internal quotations omitted).

10. Relationships "will not give rise to a *confidential relation* ... unless there is evidence of superior intellect or will on the part of the one or the other, or of trust reposed or confidence abused." *Ruebsamen*, 340 A.2d at 35 (emphasis added).

duty, the plaintiff must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship. *See Clappison v. Foley,* 148 Me. 492, 497, 96 A.2d 325, 328 (1953); *see also Gibson v. Brewer,* 952 S.W.2d 239, 245 (Mo.1997) (en banc).

 [¶ 22] The allegations set out in Bryan's complaint do not provide the "sufficient particularity" required in pleading a fiduciary relationship. *See Ruebsamen,* 340 A.2d at 35. Instead, the facts alleged by Bryan as constituting a fiduciary relationship simply reiterate the basic elements of a fiduciary relationship. Recitation of those basic elements cannot substitute for an articulation in the complaint of the specific facts of a particular relationship. The allegation that Bryan placed "substantial trust and confidence" in the elders of the church and trusted them "to protect him and guide him" does not set forth the factual foundations for a special responsibility on the part of the church. Such vague and nonspecific allegations are wholly insufficient to make out a claim of a special relationship between the organization and its members.

[¶ 23] Finally, the complaint does not allege that there were aspects of Bryan's relationship with the church that were distinct from those of its relationships with any other members, adult or child, of the church. The creation of an amorphous common law duty on the part of a church or other voluntary organization requiring it to protect its members from each other would give rise to "both unlimited liability and liability out of all proportion to culpability." *Cameron v. Pepin,* 610 A.2d 279, 283 (Me.1992); *see also Jackson,* 1999 ME 26, ¶ 8, 723 A.2d at 1221 (finding no special relationship between the American Legion and a "regular customer" except as created by the Maine Liquor Liability Act, 28–A M.R.S.A. §§ 2501–2520 (1988 & Supp. 1998)); *Hughes v. Beta Upsilon Bldg. Ass'n,* 619 A.2d 525, 527 (Me.1993) (finding

no duty to prevent spectator from injuring himself during fraternity activities).

[¶ 24] Accordingly, accepting the facts as alleged in the complaint, the Superior Court did not err in dismissing that portion of the complaint which depended upon the imposition of a generalized fiduciary duty on the part of the church to protect members of its congregation from other members.

C. Intentional Infliction of Emotional Distress

 [¶ 25] Bryan next claims that the defendants may be responsible for intentionally inflicting emotional distress upon him. If allowed to proceed, Bryan would be required to demonstrate that the church's conduct was "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious [and] utterly intolerable in a civilized community." *See Finn v. Lipman,* 526 A.2d 1380, 1382 (Me.1987). In addition, he would be required to demonstrate that the church, through this specific conduct, intentionally or recklessly inflicted emotional distress, or was certain or substantially certain that emotional distress would result. *See id.; see also Davis v. Currier,* 1997 ME 199, ¶ 5, 704 A.2d 1207, 1209; *Colford v. Chubb Life Ins. Co.,* 687 A.2d 609, 616–17 (Me.1996).

[¶ 26] In support of his claim, Bryan alleges that the church knew of Baker's propensity to harm children, that it failed to announce Baker's misdeeds to the congregation, that, through its agents, it devised a plan to address his transgressions, and that this plan was "woefully inadequate" to protect against future harm of minors, including minor members of the church. Bryan asserts that the church's failure to excommunicate Baker, its failure to shun him, and its eventual decision to allow Baker to a resume a position of leadership and respect within the church constituted acts that were sufficiently extreme and outrageous that they exceeded all possible bounds of decency.

[¶ 27] We do not lightly dismiss the harm caused by the sexual abuse of children, nor do we misapprehend the enormity of that harm if inflicted in the context of religious activities.[11] On these facts, however, we conclude that the effort to hold the church responsible, in addition to the wrongdoer himself, would require direct inquiry into the religious sanctions, discipline, and terms of redemption or forgiveness that were available within the church in the context of this claim, an inquiry that would require secular investigation of matters that are almost entirely ecclesiastical in nature.[12]

[¶ 28] State courts may not interfere in matters concerning religious doctrine or organization. *See Swanson v. Roman Catholic Bishop of Portland*, 1997 ME 63, ¶ 7, 692 A.2d 441, 443. A religious organization's decisions and actions when providing advice, counsel, or religious discipline to its members will be based on the particular religious beliefs of the organization, and thus, like the decisions and actions with respect to the organization's government, cannot by themselves form the basis for secular liability. *See id.* ¶ 12, 692 A.2d at 445 (quoting *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis.2d 302, 533 N.W.2d 780, 790 (1995) and *Schmidt v. Bishop*, 779 F.Supp. 321, 332 (S.D.N.Y. 1991)). Allowing a secular court or jury to determine whether a church and its clergy have sufficiently disciplined, sanctioned, or counseled a church member would insert the State into church matters in a fashion wholly forbidden by the Free Exercise Clause of the First Amendment.

[¶ 29] The Superior Court did not err in dismissing that portion of Bryan's complaint asserting a claim of intentional infliction of emotional distress against the church and its elders.

## D. Negligent Infliction of Emotional Distress

[¶ 30] Although it is no longer necessary for a plaintiff to plead or prove the existence of a separate tort in order to assert a claim for negligent infliction of emotional distress, a plaintiff must nonetheless demonstrate that the defendant owed him a duty of care and must prove the breach of that duty of care by the defendant. *See Devine v. Roche Biomed. Labs., Inc.*, 637 A.2d 441, 447 (Me.1994). The removal of the necessity for a plaintiff to allege an underlying tort or physical impact did not create a new cause of action, but simply removed the barriers that prevented plaintiffs from proceeding with claims already recognized in Maine, when the only damage suffered was to the psyche. *See id.*

[¶ 31] In examining the scope of this tort, we have declined to apply a pure foreseeability analysis to determine when a duty arises. *See Cameron v. Pepin*, 610 A.2d 279, 284 (Me.1992). Only where a particular duty based upon the unique relationship of the parties has been established may a defendant be held responsible, absent some other wrongdoing, for harming the emotional well-being of another. *See, e.g., Bolton v. Caine*, 584 A.2d 615, 618 (Me.1990) (holding that a physician-patient relationship gives rise to a duty to avoid emotional harm from failure to provide critical information to patient); *Gammon v. Osteopathic Hosp. of Me.*, 534 A.2d 1282, 1285 (Me.1987) (holding that a hospital's relationship to the family of deceased gives rise to a duty to avoid emotional harm from handling of remains); *Rowe v. Bennett*, 514 A.2d 802, 806–07 (Me.1986) (holding that the unique nature of psychotherapist-patient relationship gives rise to a duty of care to the patient).

---

11. Bryan does not allege that Baker molested him during any of the church's activities.

12. The *amicus* provides multiple examples of differing principles applied in various religions to determine whether and under what circumstances a church can or should discipline its members and what methods of discipline, counseling, and spiritual guidance are available.

[¶ 32] We have never recognized a relationship between churches and their members of the type that would give rise to a duty to avoid psychic injury to those members, and we could not do so without inquiring into the ecclesiastical relationship whose components are not within the purview of the secular courts. *See Swanson*, 1997 ME 63, ¶ 7, 692 A.2d at 443. The court did not err in dismissing Bryan's claim of negligent infliction of emotional distress.

The entry is:

Judgment affirmed.

