STATE OF MAINE                                 SUPERIOR COURT
ANDROSCOGGIN, SS.                              CIVIL ACTION

RECEIVED & FILED Docket No.  CV-99-135

SKS- AND- 12/21/2000

DEC 21 2000
ANDROSCOGGIN
SUPERIOR COURT

JOSEPH R. GAMACHE,

Plaintiff

                                               DECISION ON MOTION
v.                                             FOR PARTIAL
                                               SUMMARY JUDGMENT
KINGFIELD SAVINGS BANK

and

GERARD C. BELANGER,

Defendants

This matter comes before the court on the defendants' motion for partial summary judgment with regard to the plaintiff's eight count complaint. The court has reviewed those facts set forth in the parties statements of material fact, and considered their written and oral arguments. The court will grant the defendants' motion in part, as set forth below. After a brief introduction of the facts, the court will consider the defendants' arguments in the order set forth in their memorandum of law.

## I. BACKGROUND

Plaintiff Gamache purchased a building in Lewiston, Maine, for the purpose of operating a restaurant. Gamache, through his agent, pursued a loan for $380,000, for improvements and start up costs associated with the new business. Defendant Belanger, a loan officer for defendant Kingfield Savings Bank (Bank), received

DONALD L. GARBRECHT
LAW LIBRARY

DEC 28 2000

financial statements and business forecasts from Austin Associates (Austin report). The bank issued Gamache a commitment letter for a loan in the amount $380,000 on March 17, 1998. One of the conditions for obtaining the loan was a guarantee by the Small Business Administration (SBA) for 90% of the loan. The SBA ultimately approved the guarantee, but only for 75% of a $285,000 loan. Another condition precedent to approval of the loan, was that Gamache obtain a subordinate loan of $25,000 from the Lewiston-Auburn Economic Growth Council (LAEGC). The LAEGC loan was rejected on February 26, 1999, purportedly because of inadequate industry management experience, a delinquent credit history, excessively leveraged financial statement and balance sheet, and insufficient fall back liquidity. On March 1, 1999, the bank terminated the commitment letter in light of Gamache's failure to obtain the subordinant loan for LAEGC. Gamache subsequently brought this eight count complaint alleging interference with an advantageous business relationship, fraud, negligent misrepresentation, intentional infliction of emotional distress, breach of fiduciary duty, negligence, vicarious liability, and punitive damages.

## II. ECONOMIC LOSS

The defendants first seek summary judgment with respect to Gamache's anticipated claim that his economic loss due to his inability to borrow the capital necessary to start his restaurant is in excess of $2,000,000. This anticipated damage claim is found in the deposition testimony of the plaintiff's expert, Richard Clarke, based on his extrapolations from the "Austin report." The defendants first urge the

2

court to grant them summary judgment rejecting the lost business claim by adapting the so-called "new business rule." This concept is that a plaintiff may not recover lost profits or damages for a new business because those damages would be merely speculative and incapable of being ascertained with any certainty. This so-called rule has been used in some jurisdictions outside of Maine, but the majority of jurisdictions have not adopted this rule and neither will this court. The speculative nature of assessing what a business would have earned had it actually started may certainly be argued by the defendants to the fact finder, but this is not a basis for summary judgment.

The defendants also argue, more in the nature of a motion in limine, that the court should reject Mr. Clarke's testimony under Rule 702 of the Maine Rules of Evidence because the "Austin report" contains errors and unsupportable assumptions and Clarke's methodology is suspect. The court has reviewed those portions of the deposition of Mr. Clarke, Mr. Woodard, and the "Austin report," and sees no basis on which to exclude this evidence from consideration by the jury. The defendants' argument goes more to the weight to be given this evidence rather than its admissibility.

## III. INTERFERENCE WITH ADVANTAGEOUS RELATIONSHIP (COUNT I)

The defendants next seek summary judgment on Count I of the amended complaint—interference with advantageous relationship—on the basis that the plaintiff has no evidence that the defendants caused such interference. Defendants

3

argue that this claim "hinges upon the existence of a contract between Gamache and the [LAEGC]." The defendants are correct that there is a paucity of evidence of any contract between Gamache and LAEGC or if there was a contract that the defendants interfered with it. However, the court does not read Count I of the amended complaint so narrowly. Gamache must come forward with evidence showing a prima facia case for interference with an economic relationship which includes: the existence of a contract or prospective economic advantage, interference with that contract or advantage through fraud or intimidation, and damages proximately caused by the interference. *James v. MacDonald*, 712 A.2d 1054, 1057 (Me. 1998). Even in the absence of a contract with the LAEGC, Gamache claims a broader prospective economic advantage in the outcome of the entire restaurant project. This arguably meets the first of the criteria set forth in *James*. As to the second criteria, Gamache also claims that delays caused by the bank were the reason he never obtained the loan, relying on his own testimony and that of Mr. Clarke. The argument is that delays, if any, caused the LAEGC to deny the loan. This is contested by the testimony of other witnesses, but it does create a genuine issue of material fact sufficient to defeat a motion for summary judgment.

## IV.  BREACH OF FIDUCIARY DUTY  (COUNT V)

Defendants next move for summary judgment as to Count V of the amended complaint for breach of fiduciary duty, arguing that neither of the defendants was a fiduciary of Gamache. Maine law has described a fiduciary duty where one person

4

has actually placed trust in the expertise of the other and there is a great disparity in influence and position between the parties. *Bryan R. v. Watchtower Bible & Tract Society of New York, Inc.*, 1999 ME 144, ¶ 19, 738 A.2d 839, 846. More specific to the present case, the Law Court has held "To demonstrate the necessary disparity of position and influence in such a bank-borrower relationship, a party must demonstrate diminished emotional or physical capacity or . . . the letting down of all guards and bars." *Stewart v. Machias Savings Bank*, 2000 ME 207, ¶ 11, ___ A.2d. ___. Gamache has presented no evidence that he was suffering from diminished emotional or physical capacity while he was dealing with the bank. Gamache's legal arguments concerning the defendants' duty to him concern that type of duty which is the concern of a claim of negligence rather than a fiduciary duty. Accordingly, summary judgment will be granted with regard to Count V of the amended complaint.

## V. NEGLIGENCE (COUNT VI)

Defendants' next seek summary judgment as to Count VI of the amended complaint, in which Gamache alleges negligence through a breach of their duty to exercise all reasonable care to conform to prevailing lending practices and the processing of Gamache's application. Defendants argue that they owed no duty to Gamache which could give rise to this tort claim. The court agrees. Although there is no Maine law on the subject, cases from other jurisdictions cited by the defendants, particularly *Kearns v. Temple Technical Institute, Inc.*, 993 F. Supp. 717,

5

721 (D. Ariz. 1997), shy away finding such duty that would give rise to a negligence claim when the relationship between the bank and claimant is merely that of borrower and lender. The relationship between Gamache and the defendant was always that of potential borrower to potential lender. The parties arguably had a contractual relationship, as expressed in the commitment letter, but while this relationship might give rise to a breach of contract, it does not establish a duty whose breach would support a claim of negligence. Therefore, the court will grant summary judgment with regard to Count VI of the complaint.

## VI. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The defendants next seek summary judgment on Gamache's claim on intentional infliction of emotional distress. The elements of this tort are quite rigorous and the defendants argue that Gamache simply does not have the evidence to support this claim. However, after reviewing Gamache's statements of material fact in the light most favorable to him, and case law he cites on what evidence is sufficient to prove extreme and outrageous conduct, the court concludes that Gamache has at least presented a prima facia case. This claim depends heavily upon the facts and there are genuine issues of material fact, such as the existence and degree of emotional distress that the matter should go to the fact finder.

## VII. PUNITIVE DAMAGES

The defendants next seek summary judgment on all punitive damage claims. In order to obtain punitive damages, the plaintiff must show by clear and

6

convincing evidence that the defendants' conduct was motivated by ill will or was so outrageous that malice may be implied. *Gayer v. Bath Iron Works, Corp.*, 687 A.2d 617, 622 (Me. 1996). Although the statements of material fact are devoid of any personal ill will or malice, there are contested material facts with regard to the alleged outrageous nature of defendants' activities sufficient to send the issue to the fact finder. Therefore, defendants motion with regard to punitive damages will be denied for now, but may be renewed as appropriate during the trial.

## VIII. EMOTIONAL DISTRESS

Finally, defendants seek summary judgment with regard to Gamache's claim for severe emotional distress under Counts II, III, and VI of the complaint and his claim of loss of business earning and profits under Counts III and VI of the complaint. The court agrees with the defendants with regard to the severe emotional distress complaint under the fraud claim (Count II). *Jourdain v. Dineen*, 527 A.2d 1304, 1307 (Me. 1987). The court also agrees that emotional distress damages are not recoverable in an action for negligent misrepresentation (Count III). With regard to the negligence claim (Count VI), the court is already granting summary judgment above. The loss of business profits would appear appropriate as one measure of damages in a claim for negligent misrepresentation.

## XI. ENTRY

In light of the foregoing, the entry will be:

Defendants motion for partial summary judgment is granted in part and it is ordered that summary judgment shall be entered for the defendants as follows:

(1) Summary judgment as to Counts IV and VI;

(2) Summary judgment as to claims for emotional distress arising from fraud (Count II) and negligent misrepresentation (Count III).

In all other respects, the defendants motion is denied.

DATED: December 21, 2000

S. Kirk Studstrup
Justice, Superior Court

The office of Daniel G. Lilley
for the plaintiff

Lee H. Bals, Esq., George J. Marcus, Esq. and
Michael J. Gartland, Esq. For the Defendants