STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & CONSUMER COURT
DOCKET NO. BCD-CV-2020-24

H.A.T., LLC                                    )
                                               )
                   Plaintiff,                  )
          v.                                   )     ORDER GRANTING MURRAY, PLUMB &
                                               )     MURRAY'S MOTION TO DISMISS
GREENLEAF APARTMENTS, LLC,                     )
                                               )
MURRAY, PLUMB & MURRAY, P.A.                   )
                                               )
and                                            )
                                               )
NICHOLAS ESTES                                 )
d/b/a ESTES HOMES, LLC,                        )
                                               )
                   Defendants.

Plaintiff H.A.T., LLC ("H.A.T.") entered into a series of agreements with Defendant Greenleaf Apartments, LLC ("Greenleaf") to purchase certain residential real estate properties located in Portland, Maine. Greenleaf ultimately defaulted H.A.T. for failure to perform under the agreements. H.A.T. contends the default was wrongful, and has brought an amended complaint against Greenleaf, and Greenleaf's legal counsel, Defendant Murray, Plumb & Murray ("MPM), for statutory right of redemption, Count I; unfair trade practices, Count II;[1] fraud or deceit, Count III; promissory or equitable estoppel, Count IV; and breach of contract, Count V. MPM contends the claims against it should be dismissed pursuant to M.R. Civ. P. 12(b)(6), because H.A.T. has failed to state a claim against opposing counsel upon which relief can be given. The Court agrees, and grants MPM's Motion to Dismiss.

---

[1] H.A.T. consents to dismissal of its unfair trade practices claim against both Greenleaf and MPM, and thus the Court dismisses Count II in its entirety.

1

**LEGAL STANDARD**

When reviewing a motion to dismiss under Rule 12(b)(6), the Court "consider[s] the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.,* 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory. *Id.* (quoting *Saunders v. Tisher,* 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that [it] might prove in support of [its] claim." *Id.* However, the Court is not required to accept as true allegations that are merely legal conclusions couched as factual allegations. *See, e.g., Bryan R. v. Watchtower Bible and Tract Society of New York, Inc.,* 1999 ME 144, ¶¶ 20-22, 738 A.2d 839; *Courtois v. Maine Pub. Employees Retirement Sys.,* No. AP-11-26, 2012 WL 609567 (Me. Super. Ct. Jan 17, 2012). In addition to accepting the well-pled factual allegations of the Complaint, the Court may consider contract documents incorporated by reference into the complaint, without converting the motion to a motion for summary judgment. *See Moody v. Maine State Liquor & Lottery Comm'n, 2004 ME 20,* ¶¶ 9-10, 843 A.2d 43.

**FACTS**

The following facts pled in the amended complaint are considered as if they are admitted. H.A.T. is a Maine limited liability company, managed by David O'Donnell ("O'Donnell"). Greenleaf is also a Maine limited liability company, and at all relevant times was managed by Richard Harris ("Harris").[2] In December 2007, as a result of negotiations between O'Donnell and Harris, H.A.T. entered into a Conditional Contract For Sale of Land and Buildings (the "Conditional Contract"), effective January 1, 2008, for the long term, installment purchase of real

---

[2] Mr. Harris has since passed away.

estate located on Greenleaf Street in Portland, Maine (the "Property"). The Property consists of land and three buildings which include a total of fifteen three-bedroom apartments. The Conditional Contract lists Jewell & Boutin as H.A.T.'s legal counsel, and MPM as Greenleaf's legal counsel. The parties also signed a Promissory Note, and a Memorandum of Installment Sales Contract (the "Memorandum") which was in due course filed in the Cumberland County Registry of Deeds. At closing, both parties were represented by their respective counsel: H.A.T. was represented by Jewel and Boutin, P.A., and Greenleaf was represented by MPM. H.A.T. took possession of and began managing the Property, and pursuant to the Conditional Contract began making payments to Greenleaf.

About fifteen months later, Harris informed O'Donnell that Harris wanted to safeguard the status of Greenleaf's transaction with H.A.T. in the event O'Donnell was successfully sued in a lawsuit relating to his other ventures. Harris asked O'Donnell to execute certain documents prepared by Greenleaf's counsel, MPM. Harris told O'Donnell the purpose of the documents was to allow Greenleaf to cancel the Memorandum in the Registry of Deeds if O'Donnell was sued, but allow H.A.T. to continue to manage the Property and ultimately receive title once all the payments were made. Harris told O'Donnell the documents would only be used if necessary to protect H.A.T. and would otherwise be held in a file by MPM.

As a result of this discussion, on behalf of their respective entities, O'Donnell and Harris signed a Memorandum of Agreement Relating to Termination of Conditional Contract For Sale of Land and Buildings dated April 6, 2009 (the "Memorandum of Agreement"). The Memorandum of Agreement was drafted by MPM and states in relevant part:

> The parties shall enter into a "Agreement of Termination of Conditional Contract for Sale of Land and Buildings" (the "Agreement") in the form attached hereto as Exhibit A and shall execute the same. This Agreement shall be held in escrow by

Murray, Plumb & Murray and may be released by Murray, Plumb & Murray for recording upon the happening of any "event of default," including (a) the failure to timely make any payment under that certain Promissory Note by and between the parties dated January 1, 2008, or any related payment (escrows for real estate taxes, and similar escrows) directly into Greenleaf's checking account established for this purpose, by the 10th of each month. All transfers must be done electronically or directly by deposit. Greenleaf shall not be obligated to accept checks via mail or otherwise. No notice need be given by Greenleaf to H.A.T. prior to release of the Agreement for recording in the event of any default in making timely payments as set forth herein; and (b) any other default not cured within fifteen (15) days of notice thereof by Greenleaf.

The Memorandum of Agreement also states that H.A.T. "shall pay and be responsible for all of Greenleaf's attorney's fees incurred by Murray, Plumb & Murray in negotiating and effectuating these documents."

As required by the Memorandum of Agreement, O'Donnell and Harris also signed the Agreement of Termination of Conditional Contract for Sale of Land and Buildings (the "Agreement of Termination"). The Agreement of Termination was also drafted by MPM and provides in relevant part:

Effective _____, the Conditional Contract for the Sale of Land and Buildings, which is the subject of the Memorandum of Contract recorded in the Cumberland County Registry of Deeds in Book 25762, Page 50 is hereby terminated and cancelled.

The parties left the Agreement of Termination undated, as contemplated by the Memorandum of Agreement.

In 2014 and 2016, a series of calamities (frozen pipes, flooding, and fire) damaged the Property. As a result, H.A.T. lost significant rental income, and expended significant funds on clean up and repair. Harris lied to O'Donnell regarding the existence of insurance coverage and the availability of insurance proceeds. Harris also claimed that Greenleaf expended significant funds on clean up and associated activities. Harris asked O'Donnell to sign a promissory note and

4

reimburse Greenleaf in the amount of approximately $150,000 for monies advanced against the insurance claim. Harris threatened O'Donnell with a default unless O'Donnell signed the note. Harris misrepresented the need for and purpose of the $150,000 note. O'Donnell signed the note but reserved legal claims.

As a consequence of the economic losses H.A.T. sustained in connection with the Property, H.A.T.'s operating capacity was impaired, and some time prior to 2016 H.A.T. stopped making payments to Greenleaf. In August 2016, MPM inserted a then-current date on the Agreement for Termination, and filed it in the Cumberland County Registry of Deeds. H.A.T. responded by filing the Amended Complaint.

## DISCUSSION

A lawyer is not liable for his or her client's breach of contract. *See DiPietro v. Boynton,* 628 A.2d 1019, 1024-25 (Me. 1993) (Plaintiffs "failed to generate any issue that [Defendant's attorney] had not acted solely as an advocate for [the defendant]). This principle is an extension of Law Court precedent holding that "when an agent is not a party to a contract between a principle and a third party, the agent is not liable to the third party for a breach of that contract." *County Forest Products. V. Green Mountain Agency, Inc.,* 2000 ME 161, ¶ 42, 758 A.2d 59 (citing *Mueller v. Penobscot Valley Hosp.,* 538 A.2d 294, 299 (Me. 1988). Here, MPM was not a contracting party, and thus it cannot be held liable for Greenleaf's alleged breach of contract and related claims. Indeed, HAT acknowledges what it refers to as the "well known black letter law to the effect that an attorney is not liable for the contract breaches and other misdeeds of clients and owes a duty of loyalty solely to their client." (Pl.'s Opp. to Def.'s Mot. Dismiss 1.)

H.A.T. nevertheless argues that there are two exceptions to the rule. First, in reliance on *Progressive Iron Works Realty Corp. v. Eastern Milling Co.*, 150 A.2d 760 (Me. 1959), H.A.T.

5

argues that MPM can be held liable as co-Defendant for the claims brought against Greenleaf, because MPM agreed to hold the transactional documents in escrow. *Progressive Iron Works*, however, supports no such proposition. *Progressive Iron Works* did not involve a claim against opposing counsel. Moreover, the attorney in *Progressive Iron Works* acted throughout the transaction as an independent and neutral stakeholder, rather than as an advocate for the defendant. In the case at hand, MPM never relinquished its role as attorney and advocate for Greenleaf, and HAT was separately represented by legal counsel. Accordingly, H.A.T. can find no support in *Progressive Iron Works* for an exception to the rule.

Second, H.A.T. contends there is an exception to the rule when opposing counsel has aided and abetted its client in committing a tort, namely fraud. *See Barnes v. McGough*, 623 A.2d 144 (Me. 1993). In this case, H.A.T. has not explicitly pled a claim against MPM for aiding and abetting fraud.[3] However, construing the Amended Complaint in the light most favorable to H.A.T., the Court will examine H.A.T.'s argument as if the Amended Complaint does contain a claim against MPM for aiding and abetting.

In order to state a claim for aiding and abetting fraud, a complaint must aver facts demonstrating that the defendant:

> (1) committed a tortious act in concert with another or pursuant to a common design with the primary tortfeasor; (2) knew that the primary tortfeasor's conduct constitutes a breach of duty and gives substantial assistance or encouragement; or (3) gave substantial assistance to the primary tortfeasor in accomplishing a tortious result and the defendant's own conduct, separately considered, constitutes a breach of duty to another.

---

[3] In Count III of the Complaint, H.A.T. seeks to impose direct liability on MPM for its own alleged fraudulent conduct. *See Barnes*, 623 A.2d at 145 (noting the distinction between a claim for fraud, and a claim for aiding and abetting fraud). H.A.T. does not argue that its direct fraud claim against MPM survives the Motion to Dismiss, and the Court considers the argument waived. Even if the argument were not waived, it would be unsuccessful. The facts pled by H.A.T. in support of a direct fraud claim against MPM do not satisfy the particularity requirements of M.R. Civ. P. 9(b).

Restatement (Second) of Torts § 876; *see Barnes*, 623 A.2d at 145 (citing to the Restatement). Further, because the conduct involves fraud, the facts must be alleged with particularity, rather than with general averments. *Id.* at 146; M.R. Civ. P. 9(b).

In this case, the Amended Complaint falls far short of satisfying the pleading requirements. The Amended Complaint alleges with particularity that Harris misrepresented the purpose of the Memorandum of Agreement and Agreement of Termination; and that Harris lied to O'Donnell about the existence of insurance coverage, the availability of insurance proceeds, and the purpose of the $150,000 note. As to MPM, the Amended Complaint only alleges generally that MPM "concealed the unavailability of insurance proceeds, and perpetuated the claim that the $150,000 note was for expenditures which exceeded insurance coverage for approximately three and a half years." (Am. Compl. ¶ 21.) The Amended Complaint fails to describe the who, what, where, when, and how of MPM's alleged concealment and perpetuation of the claim regarding the note. The Amended Complaint fails to allege that any specific person at MPM knew about Harris' misrepresentations and lies.

The allegations regarding MPM's role in the default are similarly vague, and off target. The Amended Complaint alleges that in August 2016, at the time of entering the default, MPM "knew or should have known that GREENLEAF was substantially indebted to H.A.T." (Am. Compl. ¶ 28.) The Amended Complaint alleges that MPM prepared the legal documents. Am. Compl. ¶ 28(b).) The Amended Complaint alleges that MPM pursued "a claim against [Greenleaf's] insurance agent for negligent failure to insure the premises," and thus knew Greenleaf "had received in excess of $90,000 in proceeds." Again, the Amended Complaint fails to state with specificity any of the necessary who, what, where, when and how details concerning MPM's involvement. Moreover, the facts that are asserted, even generally, don't involve fraud.

7

As a result, the Amended Complaint fails to plead with particularity that MPM committed a fraudulent act in concert with Greenleaf or pursuant to a common design; knew that Greenleaf's conduct constituted a breach of duty; gave Greenleaf substantial assistance or encouragement to carry out fraud; or that MPM's own conduct, separately considered, constituted a breach of duty to H.A.T. For all of these reasons, the Amended Complaint fails to state a claim against MPM for aiding and abetting fraud.

## CONCLUSION

For all the foregoing reasons,[4] H.A.T. fails to state a claim against MPM,  and MPM's Motion to Dismiss is Granted.

The Clerk is instructed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

So Ordered.


Dated: December 16, 2020          _____/s_____
                                  Michael A. Duddy, Judge
                                  Business and Consumer Court

---

[4] MPM also raises specific pleading defects with each of the Counts, the first of which merits comment. Without deciding whether H.A.T. has a statutory right of redemption in this case as asserted in Count 1, the right does not exist against MPM who had no title or other interest in the Property, and who was not a contracting party. Accordingly, HAT fails to state a claim against MPM for a statutory right of redemption, and for this additional reason Count I is dismissed as to MPM.

*H.A.T., LLC*

*v.*

*GREENLEAF APARTMENTS, LLC, et al.*

Party Name:                                        Attorney Name:

*H.A.T., LLC*                                       **James Cloutier, Esq.**
                                                   Cloutier, Conley & Duffett, PA
                                                   15 Franklin Street
                                                   Portland, ME 04101

*Greenleaf Apartments, LLC,*                        **Kurt Olafsen, Esq.**
*Nicholas Estes*                                    Olafsen & Butterfield, LLC
                                                   17 Pearl Street Suite 215
                                                   Portland, ME 04101

*Murray Plumb and Murray*                           **Russell Pierce, Esq.**
                                                   Norman Hanson & Detroy, LLC
                                                   Two Canal Plaza
                                                   Portland ME 04112