1999 ME 180

Robert LEGASSIE

v.

**BANGOR PUBLISHING COMPANY.**

Supreme Judicial Court of Maine.

Argued Sept. 10, 1999.
Decided Dec. 8, 1999.

Sumner H. Lipman (orally), Walter F. McKee, Lipman & Katz, P.A., Augusta, for plaintiff.

Leigh McCarthy (orally), David C. King, Rudman & Winchell, LLC, Bangor, for Bangor Publishing.

John Aromando, Pierce Atwood, Portland, for Maine Employers Mutual Ins. Co.

J. William Druary Jr., Waterville, for William Deane.

James D. Poliquin, Norman, Hanson & DeTroy, Portland, for Royal Ins. Co.

Before CLIFFORD, DANA, SAUFLEY, and CALKINS, JJ.

SAUFLEY, J.

■ [¶ 1] Robert Legassie appeals from the judgment of the Superior Court (Kennebec° County, *Alexander, J.*) granting Bangor Publishing Company's motion for summary judgment on both counts pending against it. Legassie's complaint alleged that he suffered personal injuries when he was struck by a car driven by William Deane, who was preparing to deliver copies of the Bangor Daily News to subscribers and newsstands. Legassie asserts that the court erred in determining that Deane was not an employee of Bangor Publishing Company and that the Company did not owe Legassie a direct duty of care under a theory of "peculiar risk." Although we affirm the court's decision regarding the alleged peculiar risk, we conclude that there are material facts in dispute regarding Legassie's claim that Deane was an employee of the Company and therefore vacate the entry of judgment in favor of the Company.

## I. BACKGROUND

[¶ 2] In 1995, William Deane and his wife were engaged in delivering the Bangor Daily News each morning to customers of the Company. Robert Legassie was employed by the H.A. Hersey Company where his duties included dispensing the Bangor Daily News to delivery people such as the Deanes. One morning, as William Deane was backing up his car to assist in the transfer of papers from Legassie's truck, he struck and seriously injured Legassie.

[¶ 3] Legassie and his wife filed a complaint in Kennebec County Superior Court against William Deane, Bangor Publishing Company, and Royal Insurance of America. They alleged that Deane was negligent, and that the Company was vicariously liable because Deane was employed by the Company at the time of the accident. Alternatively, they alleged that the Company was liable under a peculiar risk theory because it had allowed an independent contractor to engage in an activity that it should have known would create a peculiar risk of harm to others. The complaint was amended on August 8, 1997, to include William Deane's wife, Carol Deane, as a defendant.

[¶ 4] The Company filed a motion for summary judgment, arguing that the undisputed facts demonstrated that Deane was not its employee and that the theory of peculiar risk could not be applied to the facts alleged. After argument, the Superior Court entered judgment in favor of the Company, holding that there were no material facts in dispute and that on those facts Deane was an independent contractor and not an employee. The court further concluded that no claim of peculiar risk was made out on the facts presented. The court granted Legassie's unopposed motion for final judgment with respect to the

Company pursuant to M.R. Civ. P. 54(b). This appeal followed.

## II. DISCUSSION

### A. Employment Status

#### (1) Applicable Law and Standard of Review

[¶ 5] Generally, an employer may be vicariously liable for the negligence of its employees, but not for the negligence of independent contractors. *See Bonk v. McPherson*, 605 A.2d 74, 78 (Me.1992) (referring to RESTATEMENT (SECOND) OF TORTS §§ 409–429 (1965)). Hence, in order to establish a claim against the Company based on vicarious liability, Legassie must show that Deane was its employee and not an independent contractor.

[¶ 6] Since our decision in *Murray's Case*, 130 Me. 181, 186, 154 A. 352, 354 (1931),[1] we have held that control is the most important factor in determining whether an individual is an employee or an independent contractor. *See Timberlake v. Frigon & Frigon*, 438 A.2d 1294, 1296 (Me.1982) ("[T]he vital issue in proving an employee-employer relationship is whether or not the employer has the power of control or superintendence over" the other person.) We have also held that the pow-

er to control includes the rights both to employ and to discharge subordinates and the power to control and direct the details of the work. *See Taylor v. Kennedy*, 1998 ME 234, ¶ 8, 719 A.2d 525, 528 (1998); *Lunt v. Fidelity & Cas. Co. of N.Y.*, 139 Me. 218, 224, 28 A.2d 736, 740 (1942). The right to control the "details of the performance," present in the context of an employment relationship, must be distinguished from the right to control the result to be obtained, usually found in independent contractor relationships. *See Lewiston Daily Sun v. Hanover Ins. Co.*, 407 A.2d 288, 292 (Me.1979).

[¶ 7] It is in light of these factors that we must determine whether summary judgment was appropriately entered. The trial court appropriately enters summary judgment when "the party that bears the burden of proof on an essential element at trial has presented evidence that, if she presented no more, would entitle the opposing party to judgment as a matter of law." *June Roberts Agency, Inc. v. Venture Properties, Inc.*, 676 A.2d 46, 48 (Me. 1996). In examining the Rule 7(d) statements we view the evidence in the light most favorable to Legassie, the nonmoving party. *See Cushman v. Tilton*, 652 A.2d 650, 651 (Me.1995).[2] When the party opposing summary judgment has demon-

---

**1.** *Murray's Case* synthesized the "commonly recognized" means of examining the existence of an independent contractor relationship and set out eight factors to be considered and weighed, including:

(1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price;
(2) independent nature of the business or his distinct calling;
(3) his employment of assistants with the right to supervise their activities;
(4) his obligation to furnish necessary tools, supplies, and materials;
(5) his right to control the progress of the work except as to final results;
(6) the time for which the workman is employed;
(7) the method of payment, whether by time or by job;
(8) whether the work is part of the regular business of the employer.

*Id.*

**2.** Cases in which the status of employee or independent contractor was decided on summary judgment are limited, as they must be, to cases in which the facts were not disputed. *See, e.g., Peerless Ins. Co. v. Hannon*, 582 A.2d 253, 254 (Me.1990). In *North East Ins. Co. v. Soucy*, 1997 ME 106, 693 A.2d 1141 (Me. 1997), a building contractor hired Soucy to help complete a project, and Soucy was injured at the construction site. North East insured the building contractor with a general commercial liability policy and sought a declaration that Soucy was not included in the policy because it excluded employees. We applied the factors from *Murray's Case* to the undisputed facts. We determined, in essence, that the inferences to be drawn from those undisputed facts pointed to only one conclusion: that Soucy was an employee. *See id.* at ¶ 18, 693 A.2d at 1145–46.

strated through the Rule 7(d) statement that there are material facts in dispute, summary judgment is not available. A material fact is one that " 'has the potential to affect the outcome of the suit.' " *Prescott v. State Tax Assessor*, 1998 ME 250, ¶ 5, 721 A.2d 169, 172 (1998) (quoting *Vinick v. Commissioner of Internal Revenue*, 110 F.3d 168, 171 (1st Cir.1997)).

[¶ 8] Accordingly, because the question at bar is whether Deane was an employee or an independent contractor, we view the facts in light of the eight factors set forth in *Murray's Case*, 130 Me. at 186, 154 A. at 354,[3] with the recognition that "control" is the most significant of these factors, *see Taylor*, 1998 ME 234, ¶ 8, 719 A.2d at 528; *Timberlake*, 438 A.2d at 1296; *Lewiston Daily Sun*, 407 A.2d at 292; *Lunt*, 139 Me. at 224, 28 A.2d at 740.[4]

(2) The Facts

[¶ 9] Comparing the parties' Rule 7(d) statements with the factors discussed above, there are, as the Superior Court concluded, many facts that are not in dispute. Some of the undisputed facts weigh on the side of finding Deane to be an independent contractor. For example, although the Company gave Deane instructions on where to deliver the papers, to whom they were to be delivered, and by what time they were to be delivered, the Company did not control his method of delivery (e.g., on foot, bicycle, or vehicle). Deane was not told the order in which the route should be traversed or how he should operate his vehicle.[5] (*Murray's Case* factor 5.) Deane supplied his own car, his own gas, and paid for his own insurance. (*Murray's Case* factor 4.) The Company paid Deane by the job rather than by the hour. (*Murray's Case* factor 7.) The Company did not deduct income taxes or Social Security from Deane's pay.[6] For his occasional additional tasks, such as placing flyers in the papers before delivery, or placing tubes on customers' property, he was paid in varying ways. Although the Company initially showed Deane the delivery route, thereafter no Company representative accompanied Deane on the route. He was not required to deliver the papers himself, but was free to engage others to carry out the task. (*Murray's Case* factor 3.)

[¶ 10] Other undisputed facts, however, could weigh on the side of finding that Deane was an employee. These include the fact that his pay came directly from the Company, not the newspaper customers, on a weekly basis and that he was allowed to purchase accident insurance through the Company, the cost of which

---

3. The issue in *Murray's Case* was whether Murray was an employee or independent contractor for purposes of the Workmen's Compensation Act. We have recognized that the eight factor test in *Murray's Case* is derived from the common law "control test" which was "formulated for vicarious tort liability purposes, and serving to limit an employer's liability for injuries, not *to* his employee but rather *caused* by his employees." *Timberlake v. Frigon & Frigon*, 438 A.2d 1294, 1297 (Me. 1982) (citation omitted) (emphasis supplied).

4. The right to control has been emphasized in matters addressing the tort liability of the putative employer, while factors such as the nature of the work and its relation to the employer's business have special importance when determining whether the proposed employee is entitled to Workers' Compensation benefits. *See Timberlake*, 438 A.2d at 1297. These differences are justified because the policies supporting the workers' compensation determination differ from the policies supporting vicarious tort liability. *See id.* "We recognize that the purpose of limiting vicarious tort liability ... differs from the purposes which the concept of 'employee' serves in the Workers' Compensation Act, and that '(i)n applying the general principles of law governing the relations of master and servant to cases involving Workmen's Compensation, ... the provision of the [Workers' Compensation] Act are to be liberally construed.' " *Id.* (quoting *Murray's Case*, 130 Me. 181, 185, 154 A. 352, 354 (1931)).

5. Deane was expected to comply with all traffic laws.

6. We have recognized that this fact is of minimal consequence. *See North East Ins. Co.*, 1997 ME 106, ¶ 15, 693 A.2d at 1145.

was deducted from his pay. (*Murray's Case* factor 7.) In addition, the delivery of newspapers is an integral part of the business of the Company. (*Murray's Case* factor 8.) Furthermore, Deane had delivered papers for the Company since 1992, a period of three years prior to the accident in which Legassie was injured.[7] (*Murray's Case* factor 6.)

[¶ 11] In addition to the undisputed facts, however, the record demonstrates that several material facts remain in dispute. The factors at issue here include "the independent nature of [the employee's] business" or the distinct calling of the business, (*Murray's Case* factor 2), the "right to control the progress of the work except as to final results," (*Murray's Case* factor 5), and whether a written contract controls the conduct of the parties, (*Murray's Case* factor 1).

[¶ 12] The essence of the "independent nature of the business" and the "right to control the progress of the work" factors is the freedom of the employee or independent contractor to do the work without direction, so long as the work gets done. There are several disputed material facts related to whether Deane had the independence to do the work on his own. The Company asserts that it gave no specific directions to its delivery drivers as to how customer problems were to be handled, whereas Legassie argues that Deane was given very specific directions in this regard. The Company alleges that after initially acquainting Deane with the delivery route and the basic requirements, it never provided further instruction as to the manner of delivery. Legassie responds that Deane received daily "slips" from the Company with special instructions for the day. Legassie claims the Company required delivery by 6:30 A.M., but the Company states there is no such requirement, only a preference. Legassie

contends that the Company told Deane where on a new customer's property he was to erect the newspaper tube, whereas the Company denies giving him any instructions except the customer's address. Legassie also alleges that on one occasion, after receiving a complaint regarding Deane's noisy vehicle, a Company employee exercised control over how Deane did his work by directing Deane to park his car some distance from the customer's home and deliver the paper on foot.

[¶ 13] A dispute also exists over whether a written contract controlled the conduct of Deane and the ·Company. Whether there is a written contract may be significant in the factual determination of whether Deane was an independent contractor or an employee.[8] The contract in dispute contained, *inter alia,* the following language: "Distributor is an independent contractor, is not an employee or agent of the Company, and is not subject to the Company's direction or control." Whether or not this provision was in effect at the time of the accident, and if so, whether the parties conducted themselves in a manner consistent with the provision has great relevance to the determination of the nature of the Company's relationship to Deane. Moreover, an important point in determining whether a worker is an employee is the right of either party to terminate the relation without liability. *See North East Ins. Co. v. Soucy,* 1997 ME 106, ¶ 14, 693 A.2d 1141, 1144. No facts were submitted by the parties as to whether there is liability on the part of Deane or the Company in the event of a termination of the relationship.

[¶ 14] Because some of the undisputed facts weigh on the side of finding that Deane was an independent contractor, while others weigh on the side of the opposite conclusion, the disputed facts, al-

---

7. One who contracts to work for a short period of time is more likely to be an independent contractor. *See* RESTATEMENT (SECOND) OF AGENCY, § 220 cmt. j (1958).

8. The first factor in *Murray's Case* is the existence of a contract for the performance of a certain piece or kind of work at a fixed price.

though not significant in number, become particularly important. Accepting, as we must, Legassie's version of the facts along with the inferences and weight that a fact-finder could give to those facts, we cannot say that on these facts the Company is entitled to a judgment as a matter of law.

[¶ 15] Notwithstanding the existence of disputed and undisputed facts which could weigh in favor of a finding that Deane was an employee, the Company argues that such a conclusion is precluded by *Lewiston Daily Sun*, 407 A.2d at 288. *Lewiston Daily Sun*, however, provides less guidance than the Company asserts. There, the newspaper sought a declaratory judgment that its insurer had a duty to defend it in a personal injury action in which a newspaper delivery person sought damages for injuries incurred when he fell from a vehicle being used to distribute newspapers. The Lewiston Daily Sun had a contract with a separate company, J. Guy Bryant, which owned vehicles and employed drivers to deliver the newspapers. There was no dispute that the Bryant company was an independent contractor. The issue was whether the driver of the vehicle from which the delivery person fell was an employee of the newspaper, as alleged in the underlying complaint, or was an employee of Bryant. There was no suggestion that the driver was himself an independent contractor. The driver was recruited, paid, and provided with a vehicle by Bryant.[9] We held that the "record on appeal reveals that [the driver] was an employee of Bryant, who in turn provided his newspaper delivery service to Sun as an independent contractor." *Id.*

[¶ 16] In contrast to the driver in the *Lewiston Daily Sun* case, Deane was not recruited or paid by an intermediary employer, he always used his own vehicle, and he received instructions directly from the newspaper. These facts may cut in both directions on the question of employment status and are sufficiently different from

those adduced in the *Lewiston Daily Sun* matter that it is not controlling on the ultimate determination of Deane's status.

[¶ 17] We conclude, therefore, that the court erred in concluding as a matter of law that Deane was an independent contractor.

**B. Liability Based on "Peculiar Risk"**

[¶ 18] Legassie also argues that even if Deane was an independent contractor rather than an employee, the Company may nonetheless be held responsible on a theory of "peculiar risk." The *Restatement (Second) of Torts* § 416 (1965) provides that the negligence of an independent contractor may be imputed to an employer, if the employer should have recognized that the work posed a "particular risk of physical harm to others unless special precautions are taken." *Id.* Legassie claims that the Company should have known that picking up newspapers on a dark street in the early morning hours posed a peculiar risk and that under such circumstances, "a reasonable person would have required William Deane to signal with a horn while he was backing."

[¶ 19] We have not yet explicitly adopted § 416 of the *Restatement*. *See Dexter v. Town of Norway*, 1998 ME 195, ¶ 9, 715 A.2d 169, 172 (1998). In fact, we recently indicated that "[w]e are far less certain whether and under what circumstances we would recognize the doctrine variously described as involving . . . 'a peculiar risk.'" *Id.* ¶ 10, 715 A.2d at 172. Here, once again, we need not determine whether and under what circumstances we would adopt such a cause of action. We conclude that Legassie has not presented any facts that would support a claim under a theory of peculiar risk. Driving a car, in the circumstances presented here, is sim-

---

9. When Bryant's vehicle developed mechanical problems, the driver at issue began using his own vehicle for which he was compensated by Bryant.

ply not the type of risk contemplated by section 416.[10]

The entry is:

Judgment as to liability on the theory of peculiar risk affirmed. Judgment as to Deane's employment status vacated and remanded for further proceedings consistent with this opinion.

---

**10.** Because the record does not support a direct cause of action under a theory of "particular risk," we need not address the fact that the claim was not asserted in Legassie's complaint.