STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, SS.                          CIVIL ACTION
                                        Docket No. CV-06-98
                                        ULH- PEN- 10/22/2007

Jennie M. Cook,
        Plaintiff

v.                                      Order (Motion for Summary Judgment)

FILED & ENTERED
SUPERIOR COURT

OCT 2 2 2007

PENOBSCOT COUNTY

Singleton Appraisal Co.,
        Defendant

        Pending before the court is the motion of defendant Singleton Appraisal Company

for summary judgment on all counts of plaintiff Jennie M. Cook's complaint and for

partial summary judgment on its counterclaim against Cook. The court has reviewed the

parties' submissions on the motion. For the reasons set out below, the court denies the

motion.

        Cook alleges that she was an employee of Singleton and that Singleton committed

various breaches of the employment agreement. On this basis, she has brought claims

under several state and federal statutes that allow recovery for unpaid wages. She has

also raised common law claims for breach of express and implied contract, and for unjust

enrichment. In a counterclaim, Singleton alleges that Cook has violated the provisions of

a covenant not to compete. On the counterclaim, Singleton seeks partial summary

judgment to establish the breach, leaving the question of damages for hearing.

        A party is entitled to summary judgment when the record shows that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a

matter of law. M.R.Civ.P. 56(c); *see also Darlings v. Ford Motor Co.*, 2003 ME 21, ¶ 4,

825 A.2d 344, 345. The motion court views the evidence in the light most favorable to

the non-moving party. *Benton Falls Associates v. Central Maine Power Company*, 2003

ME 99, ¶ 10, 828 A.2d 759, 762. An issue is considered genuine "if there is sufficient

evidence supporting the claimed factual dispute to require a choice between the parties'

differing versions of the truth at trial." *Prescott v. State Tax Assessor*, 1998 ME 250, ¶ 5,

721 A.2d 169, 171-72 (inner citation omitted). A fact is considered to be material if it could potentially affect the outcome of the case. *Id.* ¶ 5, 721 A.2d at 172.

### A. Employee/independent contractor

All of Cook's statutory claims for relief[1] are predicated on proof that she was an employee of Singleton, rather than an independent contractor. Singleton argues here that the record on summary judgment establishes, as a matter of law, that she was an independent contractor and not an employee, and that it therefore cannot be liable on those statutory grounds.

The eight-part formulation found in *Murray's Case,* 130 Me. 181, 186 (1931), is still used to distinguish between employment and independent contractor relationships. *See Legassie v. Bangor Publishing Co.,* 1999 ME 180, ¶ 6, 741 A.2d 442, 444. As the Law Court has weighted those eight considerations, the greatest importance is attached to the extent of the putative employer's control over the performance process of the putative employee. *Id.,* ¶ 6, 741 A.2d at 444. Nonetheless, no single consideration is treated as dispositive.

Of those eight considerations, the parties agree that two run in Cook's favor and that a third benefits Singleton. More particularly, the parties' relationship was of considerable duration (two and one-half years from start to finish), and the appraisal work that Cook performed for Singleton was an important business function of Singleton. These factors, which are the sixth and eighth in the *Murray's Case* list, are indicative of employment. On the other hand, the professional and independent nature of Cook's own appraisal work (the second of the *Murray's Case* factors) is evidence that she was an independent contractor.

When – as is the case here -- some factors are not in dispute and others are, those latter disputed considerations assume greater significance when a court is called to determine if there are genuine issues of material fact. *See Legassie,* 1999 ME 180, ¶ 14, 741 A.2d at 446-447.

---

[1] Cook claims that Singleton is liable to her under 26 M.R.S. § 626 (unpaid wages following cessation of employment); 26 M.R.S. § 629 (providing employment services without compensation); 26 M.R.S. § 664(1) (violation of state minimum wage requirement); and 29 U.S.C. § 206(a)(1) (violation of federal minimum wage requirement).

The first *Murray's Case* consideration is whether the parties entered into a contract obligating the putative employee to provide "a certain piece or kind of work at a fixed price. . . ." 130 Me. at 186. Singleton correctly argues that the parties' written contract describes Cook as an independent contractor. This characterization, however, even if it the parties' own way to describe their relationship, is significant but not dispositive of the issue. *See Legassie,* 1999 ME 180, ¶ 13, 741 A.2d at 446. Here, undisputed facts reveal that Cook's relationship with Singleton was open-ended and indefinite. Plaintiff's statement of additional material facts (PSAMF) ¶ 93. Further, Singleton paid Cook a commission that was a percentage of the amount billed to a client. *Id.* ¶ 91. That percentage was fixed in the parties' agreement. *Id.* However, Singleton determined the amount of the charge, although its appraisers, such as Cook, had some authority to review and adjust the charges billed to Singleton's clients. Defendant's statement of material facts (DSMF) ¶ 50. Cook would then be paid only when the client paid Singleton. *Id.* ¶ 67. This method by which Cook was paid for the work she performed for Singleton is subject to variables that are not suggestive of a "fixed price." Singleton retained great influence over the amount that Cook would be paid for a particular appraisal, and Cook's receipt of payment was contingent on the client's payment of the bill issued by Singleton. These factors call into question the weight that should be attached to the contractual reference to an independent contractor relationship. Consequently, although the individual factors noted above are not in dispute, at least arguably they are internally inconsistent, thus calling for factual determinations.

In the third listed factor, *Murray's Case* next calls for consideration of whether the putative employee engages assistants and retains the right to control those assistants. Here, the record reveals a dispute over whether Cook asked Singleton to train and supervise a prospective appraiser or whether Singleton instructed her to do so. DSMF ¶ 64; plaintiff's opposing statement of material fact (POSMF) ¶ 64. There is also a genuine dispute about the extent of Cook's decision-making authority involving an administrative assistant. *See* PSAMF ¶¶ 115-117; defendant's reply statement of material facts (DRSMF) ¶¶ 115-117. These open factual questions preclude any adjudication of this factor as a matter of law.

Next, regarding the fourth of the *Murray's Case* considerations, one must consider

who provided the putative employee with necessary tools, equipment and materials. The facts on this point are not in particular dispute. *See* DSMF ¶¶ 11, 17, 31, 37; PSAMF ¶¶ 95, 96, 106. Cook used and paid for her own car. Singleton provided her with office space and covered some office expenses. She used her own computer. She used software provided by Singleton. Cook paid for her business cards, but a Singleton representative would not allow her to keep them because he wanted them to display a different logo. This evidence, although not subject to a point-by-point dispute, provides both parties with factual support for their opposing positions.

The fifth consideration is the nature and extent of control by the putative employer over the work and work processes of the putative employee. As is noted above, this issue is the most important factor in the analysis used to determine if an employment relationship exists. A review of the record reveals that there is an adequate factual basis for Cook to argue that she was subject to material control by Singleton as she performed her appraisal tasks. There is no dispute that as a general matter Singleton appraisers were expected not to conduct the same type of work outside of the office, PSAMF ¶ 108, and, although disputed, there is evidence that Cook was told expressly that she could not do any such outside work and that she would lose her position with Singleton if she did so.[2] PSAMF ¶ 108; DRSMF ¶ 108. Additionally, although Singleton disputes this interpretation, the record can be reasonably construed to indicate that appraisers, such as Cook, were supervised at Singleton. PSAMF ¶ 101.

Evidence of Singleton's control over Cook extends to matters outside of her substantive appraisal work and includes issues of office procedure and protocol. For example, Cook needed permission to take at least some vacation time. PSAMF ¶ 100; DRSMF ¶ 100. Singleton representative would not let Cook keep some business cards she created because of its appearance. PSAMF ¶ 106. As is noted above, there is evidence (albeit disputed) that Singleton required Cook to take on a trainee.

The court concludes that these factors constitute a legitimate factual basis on which Cook can ultimately argue that the nature and extent of Singleton's control over her work

---

[2] Of course, the purpose of a summary judgment motion is not to adjudicate such factual disputes. Rather, the court's function at this stage of the case is simply to determine whether such disputes genuinely exist.

functions are associated with an employment relationship between that parties and are not indicative of a role as an independent contractor. Because control is a factor that is entitled to greater weight than other factors, this record evidence has a correspondingly greater tendency to support an argument that an employment relationship cannot be ruled out as a matter of law.

The final outstanding consideration, which is the seventh on the *Murray's Case* list, focuses on whether the putative employee is paid by time or by the job. The relevant evidence on this point is not in material dispute and is noted above: Cook was paid on a piecework basis, although Singleton played a substantial role in setting the charges that were the basis for Cook's compensation. Further, Cook's relationship with Singleton was open-ended and ongoing and not tied to a particular project. Nonetheless, this factor favors Singleton's claim that Cook worked as an independent contractor.

As the court views the application of the law on this issue to summary judgment motion practice, there can be two ways a court may conclude that there is a triable claim that a claimant was an employee. First, the record on summary judgment may reveal that there are genuine issues of material fact on the specific terms and conditions of the relationship between the parties. In *Legassie*, for example, the Law Court concluded that even a relatively small number of disputed material factual points warranted a trial. 1999 ME 180, ¶ 14, 741 A.2d at 446-47. Second, even if the facts are undisputed, and if those facts then lead "to but one conclusion," then the employment question becomes a matter of law and would be subject to adjudication on summary judgment. *See Murray's Case*, 131 Me. at 184.[3] This suggests that if undisputed facts *do not* lead "to but one conclusion," then trial of those facts is needed. This conclusion makes sense, because in order to determine if the claimant was an employee, one must consider the *Murray's Case* factors. Although the control factor is weighted more heavily than the others, there

---

[3] *Murray's Case* is not a summary judgment case. However, even in that different context, the Law Court expressly held that the absence of disputed facts and the availability of only one conclusion that could be drawn from those facts rendered the employee-independent contractor question to be one of law. That principle has application to a summary judgment proceeding, which is designed specifically to determine if a contested issue can be addressed as a legal matter or if a trial of the facts is warranted. Thus, although *Murray's Case* is an administrative appeal, its holding appears to have application here.

still remains a comprehensive assessment of eight considerations in their totality. There clearly is a discretionary aspect to the analysis (again, unless the factors point "to but one conclusion") and the weight that one may give to the separate factors and the interrelationship assigned to them means that the answer is not always a question of law.

The court finds that to be the case here. Although the parties do not dispute a substantial number of facts that are material to the issue, there enough disputes about facts of magnitude that summary judgment is probably precluded for that reason alone. Even beyond this, however, the record does not support a determination as a matter of law that Cook was an independent contractor. Although the record at bar clearly includes evidence to support that contention, a fact-finder will be needed to weigh the effect of that evidence to conclude whether, in the end, the constellation of the *Murray's Case* factors supports Cook's claim that she was an employee. Thus, Singleton's motion for summary judgment on Cook's statutory claims must be denied.

Cook also argues that additional types of work she performed in the Singleton office support her statutory claims. The basis for Singleton's summary judgment motion on those counts does not distinguish between Cook's appraisal work and other work she contends she performed. The sufficiency of the instant record to sustain an argument that she was an employee, rather than an independent contractor, covers all aspects of her work at Singleton.

### B. Common law claims

### (1) Breach of contract

As the basis for her claim that Singleton is liable to her for breach of contract, Cook alleges that Singleton failed to pay her for appraisal work she performed for the company. Suffice it to say that the record establishes a factual basis on which she can argue that Singleton breached the contract at least in this way, and that the breach was not excused and material. *See, e.g.,* DSMF ¶ 69; POSMF ¶ 69.

### (2) Quantum meruit and unjust enrichment

Cook alleges that Singleton required her to perform administrative and clerical duties in the office that exceed the scope of the appraisal work that was the subject of the parties' written agreement. Cook appears to pursue this claim as an alternative to, or at least in conjunction with, her statutory claims that although she performed this office

work, Singleton did not compensate her for it. In support of its motion for summary judgment on this count of the amended complaint, Singleton argues that the administrative work was part of the appraisal position that Cook held with the firm and that her claim for quantum meruit constitutes a "novel" attempt to separate the former from the latter.

A claim for quantum meruit is predicated on proof that, in the absence of an express contract, a plaintiff rendered services to a defendant, that the defendant knew of and consented to those services, and that under the circumstances it is reasonable for the plaintiff to expect payment for those services. *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269, 271. Thus, the jist of a quantum meruit claim is the existence of an implied promise where the formal elements of an express contract do not exist. *Id.*, ¶ 9, 708 A.2d at 272.

The record generates a factual contention, which Singleton disputes, that pursuant to a request made by Singleton, Cook performed administrative chores such as filing and answering the phone. *See, e.g.,* POSMF ¶ 44; PSAMF ¶ 89. The resulting question is whether such responsibilities were part of an appraiser's position at Singleton or whether they went beyond the appraiser's job description. Here, the record advanced by Singleton includes its assertion that appraisers were not instructed or expected to answer the phone. DSMF ¶ 46. This would suggest that the responsibilities assigned to Cook went beyond those contemplated by the parties' contract. Consequently, this part of the work that Cook performed was not the subject of an express contract, and Cook may therefore maintain a claim for implied contract. Such a claim is not necessarily defeated by the integration clause of the parties' written contract, because a fact-finder could conclude that despite the contractual restriction on the way that written instrument could be modified, the parties nonetheless entered into a subsequent implied agreement to modify it by expanding the scope of Cook's duties. Alternatively, because the written contract provides only that "*[t]his Agreement* may not be. . .modified without the written consent of both parties," (emphasis added) a fact-finder also could conclude that the administrative work assigned to Cook was not part of the appraisal agreement in the first place and thus was not subject to that restriction.

For the same reasons why the record on summary judgment allows Cook to pursue

her claim for quantum meruit, it also supports a claim for unjust enrichment. *See Cummings v. Bean*, 2004 ME 93, ¶ 9, 853 A.2d 221, 224.

### C. Covenant not to compete

The parties' written agreement contained a non-compete provision, which barred Cook from performing "appraisal services for any of Singleton customers/clients (as they may be or become during the term of this Agreement)." Cook worked for Singleton from January 2000 through July 2002. The duration of the restriction was a three-year period commencing with Cook's "termination" from Singleton. The non-competition covenant therefore would have expired in July 2005. In a counterclaim, Singleton alleges that she violated this restriction. Here, it seeks summary judgment on its liability claim. It does not ask for an adjudication of damages (the contract recites liquidated damages of $25,000) but rather proposes to defer that issue to a hearing on damages.

The record on summary judgment establishes that after Cook separated from Singleton in July 2002, she founded an appraisal company. While she worked for Singleton, she performed an appraisal for Aegis Lending. She also did appraisal work for Aegis after she left Singleton. DSMF ¶¶ 74-75.[4] The record also includes evidence that a Singleton representative told Cook, during the time when Cook worked for Singleton, that the non-compete term would not prohibit her from performing appraisal work for any clients whom Cook brought to Singleton. POSMF ¶ 78. This evidence would support an argument that Cook's post-separation appraisal work for any such client would not violate the covenant not to compete. The record does not reveal whether Aegis became a Singleton client because Cook created that relationship or whether Aegis came to Singleton through some other means. Therefore, the court cannot conclude on this record that, as a matter of law, Cook's work for Aegis subsequent to July 2002 constituted a violation of the agreement.

Cook also argues that the covenant is not enforceable because its scope is excessive and thereby violated public policy. This argument cannot be rejected on the present

---

[4] Singleton's statement of material fact also identifies two other businesses (Ditech and TransUnion) for whom Cook did appraisal work after she left Singleton. From the court's review of Singleton's submission, however, the SMF does not assert that these businesses were Singleton clients. Thus, to the extent revealed by Singleton's rule 56(h) filing, the only common client appears to be Aegis.

record. Cook contends that the effect of the restriction would prevent her from performing any appraisal work. This is, she argues, because Singleton has a large stable of clients, and the non-compete clause would mean there were so remaining appraisal customers that Cook could not find other non-Singleton clients.

A covenant not to compete is deemed enforceable if, among other things, it is of reasonable scope and promotes a legitimate business interest. *See Brignull v. Albert*, 666 A.2d 82, 84 (Me. 1995). "The reasonableness of a noncompetition covenant is a question of law that must be determined by the facts developed in each case as to its duration, geographic area, and the interests sought to be protected." *Id.* Cook does not contend that a covenant of some type is unrelated to Singleton's business interests. Indeed, she acknowledges that another aspect of the covenant, barring Cook from interfering with Singleton's relationships with its customers, is proper. The question presented here is whether the affirmative prohibition against certain appraisal work otherwise available to Cook is reasonable. The record simply does not include sufficient factual information for the court to conclude that the scope of the covenant is – or is not – reasonable. That determination must await further factual development. From this record, it is arguable that the extent to which Cook is excluded from the appraisal industry was significant. On the other hand, if the number of Singleton appraisal clients is not substantial, then Cook's ability to engage in appraisal work may not have been so impaired as to render the restriction unreasonable. That assessment cannot be made on this record. For that reason, it cannot be said as a matter of law that the covenant not to compete was either reasonable or unreasonable, and correspondingly the court cannot determine as a matter of law whether that provision is enforceable or unenforceable.

The entry shall be:

For the foregoing reasons, the defendant's motion for summary judgment is denied.

Dated: October 18, 2007

_____
Justice, Maine Superior Court
Jeffrey L. Hjelm

JENNIE M COOK VS SINGLETON APPRAISAL CO
UTN:AOCSsr  -2006-0050272                    CASE #:BANSC-CV-2006-00098
--------------------------------------------------------------------
JENNIE  M. COOK                                      PL
ATTY GILBERT, CHARLES III Tel# (207) 947-2223
ATTY ADDR:82 COLUMBIA ST PO BOX 2339 BANGOR ME 04402-2339

SINGLETON APPRAISAL CO                               DEF
ATTY LIPMAN, DAVID  Tel# (207) 622-3711
ATTY ADDR:227 WATER STREET PO BOX 1051 AUGUSTA ME 04332-1051

M=More, Space = Exit:M

Select the EXIT KEY for page selection line.