STATE OF MAINE
CUMBERLAND, ss

NANCY RAMSEY,
Plaintiff

v.

H & R BLOCK, OUR TOWN MORTGAGE,
LLC., AL STAPLES, HILLCREST ASSOCS.,
WILLIAM CHAPMAN, BAXTER TITLE
CO., JAMES R. LEMIEUX

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-09-482

REC-Cum- 12/23/2009

ORDER ON
DEFENDANTS
LEMIEUX'S AND
BAXTER TITLE
COMPANY'S
MOTION TO DISMISS

## BEFORE THE COURT

Defendants, Attorney James R. Lemieux and Baxter Title Company, move to dismiss Plaintiff Nancy Ramsey's claim against Defendants for "Breach of Fiduciary Duty and Duty of Care," pursuant to Rule 12(b)(6) of the Maine Rules of Civil Procedure.

## BACKGROUND

Nancy Ramsey's claims relate to a transaction in which she mortgaged her primary residence to finance the purchase of a rental property. During the transaction Ramsey was not represented by counsel. All of the defendants were involved the transaction: Al Staples and Our Town Mortgage, LLC guided Ramsey in obtaining financing; William Chapman and Hillcrest Associates appraised Ramsey's primary residence so she could use her primary residence as equity for the mortgage on the rental property; H & R Block provided the

1

mortgage; and James Lemieux and Baxter Title Company performed the closing on the rental property.

According to Ramsey, the facts are as follows. Ramsey asserts that in July 2006 she approached Al Staples, a mortgage broker who had arranged a home loan in the past for her. Ramsey was interested in purchasing a rental property in order to supplement her income. Ramsey alleges she asked Staples for guidance and that she trusted Staples would advise her as to what was best for her financially. Staples encouraged Ramsey to re-finance the mortgage on her primary residence so she could use her equity in her primary residence to purchase the rental property. After her first meeting with Staples, Ramsey signed a purchase contract for an apartment building on July 18, 2006. Ramsey later returned to Staples to obtain a mortgage to finance the purchase of the apartment building. Staples recommended an adjustable rate mortgage. Chapman and Hillcrest Associates appraised Ramsey's primary residence. The original appraisal value was too low for Ramsey to obtain the loan selected by Staples. At Staples' request, Chapman and Hillcrest increased the appraised value so loan could be approved.

Unknown to Ramsey, H &R Block (d/b/a Option One Mortgage Corporation) had a program, which provided mortgage brokers with an incentive to place borrowers into high priced loans, even when the same borrowers qualified for lower priced loans. The incentive program provided brokers a "yield spread premium" ("YSP"). The amount Staples was being paid by H & R Block through the YSP was directly related to the interest rate, and type of loan Ramsey took out. Ramsey alleges that nobody explained to her that the worse the deal was for her, the better the deal was for Staples. According to

Ramsey, the YSP program paid Staples $4,200, as a "Broker Fee," and a "Processing Fee" of $712. The closing on the rental property was conducted on August 14, 2006. Attorney James Lemieux and Baxter Title Company were hired by the lender to administer the closing. Ramsey states she "did not select Baxter Title Company or James Lemieux to close the loan." Ramsey alleges that she was rushed and under pressure because Baxter Title Company had another closing scheduled immediately after hers.

Ramsey filed her original complaint on September 1, 2009. She filed her First Amended Complaint on September 18, 2009. Count VII claims "Breach of Fiduciary Duty and Duty of Care" against Baxter Title Company and James Lemieux. Count VIII demands an assessment of punitive damages against all the Defendants. Ramsey alleges that despite their relationship with the lender, Baxter Title Company and James Lemieux had a confidential and special relationship with Ramsey and owed her a fiduciary duty to ensure that proper standards of care were followed in the transaction. Specifically, Ramsey alleges that Baxter Title Company and Lemieux breached their duties by (1) failing to explain the YSP program between the lender and Staples; (2) by failing to explain all of the documents to Ramsey and the risk the transaction posed to Ramsey's primary residence; and (3) by rushing Ramsey through the closing so that she did not have a final opportunity to reconsider the transaction, its structure, and its costs.

## DISCUSSION

### I. Standard of Review

A Motion to Dismiss pursuant to M.R. Civ. P. 12(b)(6) "tests the legal sufficiency of the complaint and, on such a challenge, 'the material allegations of

3

the complaint must be taken as admitted.'" *Shaw v. Southern Aroostook Comm. Sch. Dist.*, 683 A.2d 502, 503 (Me. 1996) (quoting *McAfee v. Cole*, 637 A.2d 463, 465 (Me.1994)). When reviewing a Motion to Dismiss, this Court examines "the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* A dismissal under M.R. Civ. P. 12(b)(6) will be granted only "when it appears beyond a doubt that the plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Id.* (quoting *Hall v. Bd. of Envtl. Prot.*, 498 A.2d 260, 266 (Me. 1985)). This is a question of law. *Bean v. Cummings*, 2008 ME 18, ¶ 7, 939 A.2d 676, 679.

## II. Claim of Breach of a Fiduciary Duty

Plaintiff has failed to state facts to support the existence of a fiduciary relationship between herself and Baxter Title Company or James Lemieux. "One standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation." *Bryan R. v. Watchtower Bible and Tract Society of New York, Inc.*, 1999 ME 144, ¶ 15, 738 A.2d 839, 845. The important elements of a fiduciary relationship are: "(1) the actual placing of trust and confidence in fact by one party in another, and (2) a great disparity of position and influence between the parties at issue." *Id.* at ¶ 19, 738 A.2d at 846. As described in *Bryan R*:

> Some of the indicia of a fiduciary relationship include the acting of one person for another; the having of influence over one person by another; the inequality of the parties; and the dependence of one person on another. Fiduciary duties arise for example, between attorneys and clients, guardians and wards, and principals and agents.

4

*Id.* at ¶ 18, 738 A.2d at 846 n.9. A general allegation of a confidential relationship is not a sufficient basis for establishing the existence of a fiduciary relationship. *Id.* at ¶ 20, 738 A.2d at 846. A court "must have before it specific facts regarding the nature of the relationship that is alleged to have given rise to a fiduciary duty in order to determine whether a duty may exist at law." *Id.*

Ramsey admits in her Complaint that she did not select Baxter Title Company or James Lemieux to perform the closing, and that the Defendants represented the lenders in the transaction. Lemieux was not Ramsey's attorney. He was the lender's attorney and represented the lender's interests. Ramsey contends she was owed a fiduciary duty. Ramsey cites the following from a Decision and Order by the Board of Overseers of the Bar:

> [T]he Court so finds that it is imperative for the administration of justice and for the protection of the public, that the legal community at large is aware of an attorney's ethical duty to borrowers in a mortgage transaction. Regardless of the attorney's representation of a bank in a given transaction, as in this case, the attorney also owes duties to the mortgagor, despite the involvement of other non-attorney professionals.

*Bd. of Overseers of the Bar v. Condon*, BAR-08-7 at p. 3. The court refuses to adopt this holding. First, disciplinary action orders from single justices of the Maine Supreme Judicial Court have limited value as judicial precedent. Moreover, the attorney in *Condon* acted as the closing agent selected by both the bank and the borrowers in the transaction. On the facts asserted, Ramsey claim of "Breach of Fiduciary Duty and Duty of Care" against Baxter Title Company and Lemieux fails and should be dismissed.

## III. Punitive Damages

Ramsey's claim for punitive damages against Baxter Title Company and Lemieux should also be dismissed. Punitive damages may only be imposed

where compensatory or actual damages are awarded based on the defendant's tortious conduct. Simmons, Zillman & Gregory, *Maine Tort Law* § 19.07 at 689 (1999 ed.) Additionally, punitive damages "are available only where the plaintiff proves by clear and convincing evidence that the defendant acted with malice." *Id.* Because specific facts have not been pled showing a fiduciary relationship existed, there is no underlying tort upon which punitive damages could be awarded, and no facts are pled that suggest that Baxter Title Company and Lemieux acted with malice. The punitive damages claim should also be dismissed.

Therefore, the entry is:

Defendants Baxter Title Company's and Lemieux's Motion to Dismiss is GRANTED.

Dated at Portland, Maine this 23rd day of December, 2009.

Robert E. Crowley
Justice, Superior Court

6

OF COURTS
rland County
. Box 287
aine 04112-0287

MARK KEARNS ESQ
MARK RANDALL ESQ
PO BOX 17915
PORTLAND ME 04112

P.O. Box 287
nd, Maine 04112-0287

TAYLOR FAWNS ESQ
PO BOX 7740
PORTLAND ME 04112

RONALD BOURGET ESQ
64 STATE ST
AUGUSTA ME 04330-5194

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-09-482
TDW-CUM-9/20/2011

NANCY B. RAMSEY,

Plaintiff

v.

ORDER

SAND CANYON CORP., et al,

Defendants.

STATE OF MAINE
Cumberland, ss, Clerk's Office

SEP 20 2011

RECEIVED

Before the court is defendant Sand Canyon Corporation's motion for summary judgment on Counts I, II, and VIII of the first amended complaint. Sand Canyon is the successor in interest to Option One Mortgage Corporation ("Option One").[1] Because all of the allegations in the complaint relate to Option One, all further references in this order will be to Option One.

As against Option One, the first amended complaint alleges a cause of action for fraud (Count I), a cause of action for negligent misrepresentation (Count II), and a cause of action for punitive damages (Count VIII).

The first amended complaint also named Our Town Mortgage LLC ("Our Town") and Al Staples as defendants on the fraud and misrepresentation claims in Counts I and II. Counts III through VII of the first amended complaint asserted additional fraud and misrepresentation claims against Our Town Staples and two other defendants (Hillcrest Associates and William Chapman) and breach of fiduciary duty claims claims against Our Town, Staples, Baxter Title Co., and attorney James Lemieux.

---

[1] In the original complaint H&R Block Bank was named as the lead defendant. After various proceedings, Sand Canyon was substituted for H&R Block Bank on October 7, 2010.

Baxter Title and Lemieux were dismissed as defendants by order dated December 24, 2009 (Crowley, J.). Our Town was defaulted on December 28, 2009. Remaining to be decided are the fraud and negligent misrepresentation claims against Option One (counts I and II), fraud, misrepresentation, and breach of fiduciary duty claims against Staples (counts I through VI), a fraud claim against Hillcrest Associates and Chapman (count III), and punitive damage claims against all remaining defendants

The pending summary judgment motion is addressed only to the claims against Option One.

1. Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. E.g., Johnson v. McNeil, 2002 ME 99 ¶ 8, 800 A.2d 702, 704. The facts must be considered in the light most favorable to the non-moving party. Id. Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. Rodrigue v. Rodrigue, 1997 ME 99 ¶ 8, 694 A.2d 924, 926.

In order to determine what is and what is not disputed in this case, the court has had to carefully parse the factual assertions in the parties' respective statements of

2

material facts and the record citations that purport to support those assertions.[2] The court finds that certain facts are undisputed, that Ramsey's claims against Option One are based almost entirely on documents that are contained in the record, and that Option One is entitled to summary judgment on the record before the court.

2. Background Facts

In order to care for a disabled son and in anticipation of her own retirement, plaintiff Nancy Ramsey and her other son, Edward Laigle, began searching for an apartment building where the family could reside together. On July 18, 2006 Laigle executed a purchase and sale agreement on a multi-unit apartment in Livermore Falls. That agreement anticipated a closing on August 21, 2006 with Laigle paying cash.

At or around the time that the Livermore Falls purchase agreement was signed, Ramsey had decided that she would provide the funds for the purchase, and she approached defendant Al Staples, a mortgage broker at defendant Our Town Mortgage LLC who had assisted Ramsey in obtaining the existing mortgage on her residence in Freeport, in order to explore her financing options. For purposes of summary judgment, it is not disputed (at least between Ramsey and Option One) that Staples advised Ramsey that she should refinance her existing mortgage on the Freeport property in order to obtain the funds necessary to purchase the Livermore Falls property. Option One Statement of Material Facts dated March 17, 2011 ("Option One SMF") ¶ 20 (admitted).

---

[2] In particular, the court agrees with counsel for Option One that a number of the denials and qualifications in Ramsey's opposing statement of material facts are not supported by the record evidence cited. See, e.g., Plaintiff's Response to Defendant's Statement of Material Facts dated April 20, 2011 ("Plaintiff's SMF") ¶¶ 6-9, 63, 68-69. The court also agrees with counsel for Option One that some of the more argumentative assertions in Ramsey's statement of additional facts are not supported by the record citations given. See, e.g., id. Additional Facts ¶¶ 54, 56, 57.

3

Through Staples and Our Town, Ramsey then obtained a mortgage loan from Option One based on her Freeport residence and used the proceeds from that mortgage loan to pay off her existing mortgage on the Freeport property and to purchase the Livermore Falls property. The closing of that loan occurred on August 14, 2006. Ramsey's claims against Option One are based on alleged nondisclosures and alleged misrepresentations with respect to the terms of that loan, which has since gone into default.

Specifically, Ramsey alleges that she was misled as to the amount of compensation Staples and Our Town would receive in the refinancing and was specifically misled because Option One had offered a "yield spread premium" to Staples and Our Town – allegedly without adequate disclosure to Ramsey.

A yield spread premium (YSP) is a payment made by the lender to a mortgage broker in exchange for the broker's delivery of a mortgage transaction at an interest rate higher than the borrower would otherwise receive. It has been suggested that the use of a YSP might have benefited borrowers to the extent that they were spared certain up front closing costs in exchange for a higher interest rate, but YSPs were also subject to criticism as an incentive for mortgage brokers to steer their customers into higher interest loans. See O'Sullivan v. Countrywide Home Loans Inc., 319 F.3d 732, 739-40 (5th Cir. 2003).

In 2010, after the transaction at issue in this case, the Federal Reserve adopted the latter view and engaged in rulemaking designed to prohibit the payment of yield spread premiums. See National Association of Mortgage Brokers v. Board of Governors of the Federal Reserve, 773 F.Supp.2d 151, 158, 171-77 (D.D.C. 2011).

However, as of August 2006 yield spread premiums, although potentially subject to abuse, were not illegal. As a result, Ramsey's claims against Option One have to be

4

analyzed not on whether the court approves or disapproves of yield spread premiums but based on Ramsey's claim that Option One engaged in fraudulent or negligent misrepresentation and specifically that Ramsey was not adequately informed as to the yield spread premium that Option One provided to her mortgage broker to induce her broker to place her in an unfavorable higher interest loan.

### 3. Agency

The first issue is whether there are disputed issues for trial as to whether an agency relationship existed between Option One and the mortgage broker defendants, Staples and Our Town, so that Option One may be held liable for any fraud or misrepresentation on the part of Staples and Our Town.

On this issue the undisputed facts are that Our Town had relationships with approximately 30 different lenders to whom it could apply for loans on behalf of borrowers like Ramsey. Option One was one of those 30 lenders, and it was Staples who selected Option One as the lender to whom Ramsey's application would be submitted. Option One SMF ¶¶ 32 – 34.[3] It is undisputed that Staples was not employed by Option One, and Staples and Our Town were described in documents given to Ramsey as independent contractors. See Option One SMF ¶¶ 16-17, 24 (admitted); Randall Ex. C.

Whether a person or entity is characterized as an independent contractor is not determinative of the actual relationship. At the same time, whether a person is described as an "agent" is also not determinative of whether vicarious liability can be imposed. See Restatement 3d Agency § 1.01, comment b. A supposed principal is only vicariously liable for the acts of an agent when the supposed agent is not just working

---

[3] Ramsey admitted ¶¶ 32 and 33 of Option One's SMF and although she qualified her response to ¶ 34, she did not dispute that the selection of Option One was made by Staples. See Plaintiff's SMF ¶¶ 32-34.

on the principal's behalf but the principal also controls (or has the power to control) the details of the work performed by the agent. Restatement 3d Agency §§ 1.01, 7.07(3)(a). Accord, Rainey v. Langen, 2010 ME 56 ¶¶ 14-15, 998 A.2d 342, 346-47; Legassie v. Bangor Publishing Co., 1999 ME 180 ¶ 6, 741 A.2d 442, 444. In this case no admissible evidence has been offered that would generate a disputed issue for trial as to whether Option One controlled or had the right to control the details of the work performed by Staples or Our Town.[4]

In her opposition papers Ramsey has attached a copy of a mortgage broker agreement between Option One and an unrelated broker. Randall Ex. J. This agreement does not generate a disputed issue of fact on the issue of agency for two reasons. First, there is no showing in the record that a similar agreement existed between Our Town and Option One. Second, even assuming that a similar agreement did exist between Our Town and Option One, such an agreement would not raise a disputed issue for trial as to whether Option One controlled the manner and means of the activities performed by Staples and Our Town as mortgage brokers.

Although the wording of such an agreement is not determinative, it is relevant that Randall Ex. J states that it is non-exclusive, that it does not create an agency relationship, and that the services of the broker shall be rendered as an independent contractor. Moreover, although there are a number of contractual requirements set forth in the agreement, including a provision that the broker must disclose its fees to applicants in accordance with legal requirements, none of those provisions gives Option

---

[4] The Rainey and Legassie decisions set forth a list of factors to be considered where vicarious liability is at issue, see 2010 ME 56 ¶ 15, but only one of those factors is relevant here – the "independent nature of the [alleged agent's] business or his distinct calling." That factor cuts against vicarious liability in this case because mortgage brokers have a distinct calling as intermediaries between borrowers and mortgage lenders. Indeed, mortgage brokers can in theory be seen as more the agents of borrowers than of lenders.

6

One the requisite control over the broker's "day to day operations," which is the crucial aspect of control for purposes of vicarious liability under Rainey v. Langen, 2010 ME 56 ¶¶ 16, 22, 25, 998 A.2d at 347, 349, 350.[5]

Although Option One had the right to specify the various alternative terms under which it would offer mortgage loans, including the interest rates it offered to borrowers and the yield spread premium it offered to brokers, that does not make Option One vicariously liable for any fraud or misrepresentation perpetrated by Staples and Our Town. As the Law Court pointed out in Rainey and Legassie, the right to control the result to be obtained (which is found in relationships between independent contractors) must be distinguished from the right to control the manner and means by which the work is performed. The latter is necessary for vicarious liability to exist. See 2010 ME 56 ¶ 15, 998 A.2d at 347; 1999 ME 180 ¶ 6, 741 A.2d at 444.

In this case no evidence has been offered that Option One controlled what representations were made to Ramsey by Staples or what disclosures were omitted by Staples. Nor has any evidence been offered that Option One controlled any of the details of Staples's actions or any of Our Town's day-to-day operations.

The conclusion that Ramsey has not demonstrated the existence of a factual dispute for trial as to whether Option One can be held vicariously liable is not altered by Ramsey's submission of an affidavit by another mortgage broker, Pierce Cole, who has been designated by Ramsey as an expert. See Plaintiff's SMF ¶ 18; Cole Affidavit ¶ 8. As far as the court can tell, Cole had no personal knowledge of the relationship between Option One and Our Town and his own relationship with Option One is

---

[5] Provisions requiring a broker to make all legally required disclosures are designed to result in transactions that will not be subject to subsequent legal challenges, much like contract provisions directing building contractors to obtain all necessary permits. Those provisions do not constitute the control of day to day operations necessary for vicarious liability.

7

therefore not probative as to Our Town's relationship. Perhaps more importantly, although Cole states that he considered himself to be an agent of lenders including Option One, he offers no evidence that Option One controlled or had the power to control the manner or means by which he or any other mortgage broker performed their work.[6]

The fact that an actual agency relationship with the requisite control did not exist does not necessarily rule out vicarious liability since Option One could still be held liable for the acts of the mortgage broker under an "apparent authority" theory. However, that would require a showing that Option One's conduct justifiably led Ramsey to believe that the mortgage broker was Option One's agent. See Steelstone Industries v. North Ridge Limited Partnership, 1999 ME 132 ¶13, 735 A.2d 980, 983. The undisputed facts in this case preclude any argument that there are disputed issues for trial on the issue of apparent authority. It is undisputed that Ramsey never communicated with Option One and received no communications from Option One except for the loan documents that were delivered to her at the closing. Option One SMF ¶¶ 44, 68. Ramsey has not offered any evidence that Option One engaged in any conduct or communication that led her to believe that Staples and/or Our Town were agents.

In sum, Option One is entitled to summary judgment dismissing Ramsey's claims against Option One to the extent those claims are based on vicarious liability. The remaining question is whether there is a genuine factual dispute for trial as to

---

[6] Finally, Cole has not been qualified as an expert on the issue of vicarious liability, and the court has some doubt that anyone could qualify as an expert on that issue.

8

whether Option One's own actions could have constituted fraud and/or misrepresentation.

### 4. Fraudulent Misrepresentation or Fraudulent Concealment

In order to prove that Option One is liable for fraudulent misrepresentation, Ramsey must show that Option One made a false representation of a material fact, either with knowledge of its falsity or with reckless disregard of whether it was true or false, for the purpose of inducing Ramsey to act in reliance on that representation. She must also prove that she justifiably relied on that representation to her detriment. E.g., Maine Eye Care Associates P.A. v. Gorman, 2008 ME 36 ¶ 12, 942 A.2d 707, 711.

Ramsey argues that the Mortgage Loan Origination Agreement she signed on July 24, 2006 (Randall Ex. C) fraudulently misrepresented that the broker's fee on her refinancing would be 1.5% when the broker in fact ended up receiving compensation of 3%, allegedly in exchange for steering Ramsey to a higher interest loan. However, any misrepresentations in the Origination Agreement were misrepresentations by Staples and/or Our Town, not by Option One.

On its face the Origination Agreement is a document prepared by Our Town that addresses the contractual dealings between Our Town and Ramsey. Although Staples had contacted Option One about Ramsey's refinancing before presenting the Origination Agreement to Ramsey for her signature on July 24, Option One is not mentioned in the Origination Agreement, which instead refers to Our Town's efforts to obtain financing from "various lenders." There is no evidence that Option One played

9

any role in the preparation or presentation of the Origination Agreement or the information contained in that agreement.[7]

The documents from Option One that Ramsey claims contained fraudulent misrepresentations were documents provided to Ramsey at the closing. It is undisputed that at the closing Ramsey received and signed a form entitled "Broker Compensation (YSP) and the Fees in Your Transaction." Randall Ex. E. That document first explained the concept of a yield spread premium as money paid by the lender to the broker, reducing the amount that the borrower would have pay out of pocket for loan fees with the borrower agreeing in return to pay a higher interest rate on the loan to allow the lender to recoup the money it paid.

That document went on to state:

THE YSP CHOICE IS YOURS TO MAKE

> In your transaction you are agreeing to pay a higher interest rate of 8.500 %. Your broker will directly receive compensation from Option One Mortgage Corporation ("OOMC") in the amount of $ 4,200.00. You understand that this compensation will appear as "broker compensation" or "yield spread premium" on certain disclosures (i.e., Good Faith Estimate of Closing Costs and HUD-1 Settlement Statement).

_____

[7] A copy of the Origination Agreement was subsequently faxed to Option One along with other loan application documents, but that does not make Option one a party to any misrepresentations made by Staples or Our Town. The record before the court also does not include any evidence that Option One participated in the process by which Ramsey (or Staples, acting or purportedly acting on her behalf) opted for a higher interest loan with a yield spread premium to be paid to the broker. The only evidence on that issue in the summary judgment record is a transaction log maintained by Option One which contains the following entry for August 4, 2006: "rec'd appraisal and per broker they want to increase ysp instead of getting a lower rate." Randall Ex. I.

Contrary to Ramsey's claim, this entry is not evidence suggesting that Option One "conspired" with Our Town to raise Ramsey's interest rate. Plaintiff's SMF Additional Facts ¶ 20. Rather, it indicates Option One was being informed of a choice that had been made by Staples and Ramsey. There is nothing in that entry which would have put Option One on notice that Staples had not adequately consulted Ramsey with respect to that choice.

10

At the bottom of the bottom of the form, there is a space for the borrower to sign which states, "I acknowledge that I have a choice regarding loan terms. I have voluntarily agreed to the inclusion of the Yield Spread Premium in my loan terms." Id. Ramsey signed that form at the closing on August 14, 2006.

The HUD-1 Settlement statement, also signed by Ramsey on August 14, 2006 listed both a "broker fee" of $4200 (in the "paid by borrower" column) and a "broker comp. fee from OOMC" of $4200 (denominated as paid outside of closing). Randall Ex. G.

Considering both the YSP form and the HUD-1 Settlement Statement, which are the loan closing documents cited in Plaintiff's SMF upon which Ramsey bases her claim of fraud and misrepresentation, the court does not find that there is a disputed issue for trial as to whether false representations were made by Option One.[8] Those documents disclosed that Option One was paying compensation to the broker and that Option One was receiving a higher interest rate as a result. Those documents also disclosed that the broker was receiving a fee of $4200 from Ramsey and additional compensation from Option One outside of the closing.[9] Finally, those documents specifically obtained Ramsey's acknowledgment of – and agreement with – the inclusion of the yield spread premium and the fact that she was paying a higher interest rate.

---

[8] As noted above, the only communications Option One had with Ramsey were in the documents it provided at the closing. In its reply memorandum, Option One contends that Ramsey cannot contend that she relied on those documents because she acknowledged she did not read any of the documents at the closing. Option One's Reply Memorandum dated May 11, 2011 at 2-3, citing Ramsey Dep. 69. This issue was not raised in Option One's statement of material facts and therefore cannot be considered by the court on summary judgment.

[9] An argument can be made that, by the time of the closing, the momentum of the transaction was such that Ramsey was not inclined to balk or raise questions as a result of disclosures in the closing documents. However, where Option One had no communication with Ramsey until the closing, the responsibility for any inadequate, incomplete, or misleading disclosures prior to the closing must lie with Staples and Our Town.

11

5. Negligent Misrepresentation

On her claim of negligent misrepresentation, Ramsey would have to show that Option One supplied false information for Ramsey's guidance in a business transaction, that Option One failed to exercise reasonable care or competence in obtaining or communicating the information in question, and that Ramsey suffered pecuniary loss in justifiable reliance on that information. See Rand v. Bath Iron Works Corp., 2003 ME 122 ¶ 13, 832 A.2d 771, 774.

For the same reasons set forth above in connection with Ramsey's fraud claim, the court concludes that there is no factual dispute for trial as to whether Option One provided false information to Ramsey, given the disclosures made to her in the YSP form and the HUD Settlement Statement. As a result, Sand Canyon (as successor in interest to Option One) is entitled to summary judgment on Ramsey's negligent misrepresentation claim as well as on her fraud claim.[11]

The entry shall be:

Defendant Sand Canyon Corporation's motion for summary judgment is granted and counts I, II, and VIII of the complaint are dismissed as against Sand Canyon. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: September __20__, 2011

Thomas D. Warren
Justice, Superior Court

---

[11] It follows that the punitive damage claim against Option One in Count VIII of the first amended complaint must also be dismissed. Punitive damages can only be awarded based on a finding that the defendant has engaged in tortious conduct. The dismissal of the underlying tort claims against Option One therefore eliminates the punitive damages claim as well.

13